PD-0746-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/17/2015 1:31:42 PM
Accepted 7/17/2015 4:31:56 PM
ABEL ACOSTA
CLERK

**No. PD-0746-15**

In the Court of Criminal Appeals of Texas

◆

**No. 14-13-00559-CR**

In the Fourteenth District Court of Appeals (Houston, Texas)

◆

**No. 1368190**

In the 228th District Court, Harris County, Texas

◆

**JUAN QUINTERO,**

*Petitioner*

**v.**

**THE STATE OF TEXAS,**

*Respondent*

◆

**PETITION FOR DISCRETIONARY REVIEW**

◆

FILED IN
COURT OF CRIMINAL APPEALS

July 17, 2015

ABEL ACOSTA, CLERK

**PEYTON Z. PEEBLES, III**
SHELLIST, PEEBLES & MCALISTER, LLP
405 Main Street, Suite 200
Houston, Texas 77002
Tel.:      (713) 715-4500
Fax:      (713) 715-4505
Email:   peebles@texaslegalteam.net
SBOT:   24013307

*Counsel for Petitioner*

ORAL ARGUMENT REQUESTED

1

**TO THE HONORABLE COURT OF CRIMINAL APPEALS
OF TEXAS:**

Comes now Petitioner, Juan Quintero, by and through his undersigned counsel, and presents this Petition for Discretionary Review ("PDR") pursuant to Tex. R. App. P. § 68.

## PARTY IDENTIFICATION

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below:

**Counsel for Petitioner:**

| | |
|---|---|
| Peyton Z. Peebles, III — | Motion for new trial, appeal & PDR |
| Steven D. Shellist — | Motion for new trial |
| | Shellist, Peebles & McAlister, LLP |
| | 405 Main Street, Suite 200 |
| | Houston, Texas 77002 |
| | |
| Rigoberto Rodriguez — | Plea bargain |
| | 2120 S Wayside Dr., Ste J |
| | Houston, TX 77023 |

**Appellant (Criminal Defendant):**

Juan Quintero

**Counsel for the State:**

| | |
|---|---|
| Devon Anderson — | District Attorney |
| Mike Anderson— | Former District Attorney |
| Patricia Lykos— | Former District Attorney |
| Clinton A. Morgan — | Assistant District Attorney |

Greg Houlton — Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Ste. 600
Houston, Texas 77002

**Trial Judge:**

Hon. Marc Carter — Presiding Judge
228th District Court
Harris County, Texas
Criminal Justice Center
1201 Franklin, 16th Floor
Houston, Texas 77002

**TABLE OF CONTENTS**

**PARTY IDENTIFICATION** ................................................................. 2

**TABLE OF CONTENTS** .................................................................. 4

**INDEX OF AUTHORITIES** ............................................................ 6

**STATEMENT REGARDING ORAL ARGUMENT** ............................. 8

**STATEMENT OF THE CASE** ........................................................... 8

**STATEMENT OF PROCEDURAL HISTORY** .................................... 8

**GROUND FOR REVIEW** ..............................................................10

The panel majority erred in holding that the trial court reasonably denied petitioner's motion for new trial despite a record clearly showing: (1) his lawyer had an actual conflict of interest; and (2) his lawyer acted contrary to petitioner's interests in at least four instances. ............................................. 10

**ARGUMENT** ............................................................................. 11

I.   FACTS LEADING TO MOTION FOR NEW TRIAL ...............................11

II.  FACTS FROM HEARING ON PETITIONER'S MOTION FOR NEW TRIAL....13

III. GROUND FOR REVIEW — THE PANEL MAJORITY ERRED IN HOLDING THAT THE TRIAL COURT REASONABLY DENIED PETITIONER'S MOTION FOR NEW TRIAL DESPITE A RECORD CLEARLY SHOWING: (1) HIS LAWYER HAD AN ACTUAL CONFLICT OF INTEREST; AND (2) HIS LAWYER ACTED CONTRARY TO PETITIONER'S INTERESTS IN AT LEAST FOUR INSTANCES. .................. 22

**PRAYER FOR RELIEF** ................................................................27

**APPENDIX** ................................................................................ 30

# INDEX OF AUTHORITIES

**Cases**

*Acosta v. State*, 233 S.W.3d 349 (Tex. Crim. App. 2007) .................21

*Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708 (1980)................... 22

*Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982) ....................................23

*Monreal v. State*, 947 S.W.2d 559 (Tex. Crim. App. 1997) ...............21

*Quintero v. State*, No. 14-13-00559-CR, 2015 WL 2405549
    (Tex. App.—Houston [14th Dist.] May 19, 2015).......... 7, 20, 24

*Ramirez v. State*, 13 S.W.3d 482 (Tex. App.—Corpus
    Christi 2000, pet. dism'd).......................................................21

*Strickland v. Washington*, 466 U.S. 668 (1984) .............................. 20

*United States ex rel. Hampton v. Leibach*,
    347 F.3d 219 (7th Cir. 2003)...................................................23

*United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975).......................21

*United States v. Greig*, 967 F.2d 1018 (5th Cir. 1992) .................. 21, 22

**Statutes**

TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv) (Vernon 2011) .............. 6

TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Vernon 2011).................... 6

**Rules**

TEX. R. APP. P. 38.2(a)(1)(A) ............................................................. 2

TEX. R. APP. P. 39.1 .......................................................................... 6

TEX. R. APP. P. 9.4(g) ....................................................................... 6

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, Petitioner requests oral argument to expand the legal theories stated herein and to assist the Judges of this Court.

———————◆———————

## STATEMENT OF THE CASE

The State charged appellant by indictment with aggravated sexual assault of a child in violation of TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(iv) & (2)(B) (Vernon 2011). Appellant pled guilty to the charge. The judge accepted his plea, found him guilty, and sentenced him pursuant to the plea bargain to confinement for six years in the Texas Department of Criminal Justice, Institutional Division.

Petitioner lodged an unsuccessful motion for new trial, followed by an unsuccessful appeal. This PDR follows.

———————◆———————

## STATEMENT OF PROCEDURAL HISTORY

The State charged appellant by indictment with aggravated sexual assault of a child in violation of TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(iv) & (2)(B) (Vernon 2011). Appellant pled guilty to the charge on June 4, 2013. The judge accepted his plea, found him guilty, and sentenced him pursuant to the plea bargain to confine-

ment for six years in the Texas Department of Criminal Justice, Institutional Division, on that date.

Appellant filed a timely and written motion for new trial and notice of appeal. The trial court held a hearing on appellant's motion for new trial on August 12, 2013, and denied the motion on the same date. The trial court certified his right to appeal.

On May 19, 2015, a divided panel from the Fourteenth District Court of Appeals affirmed petitioner's judgment and sentence. *Quintero v. State*, No. 14-13-00559-CR, 2015 WL 2405549 (Tex. App.—Houston [14th Dist.] May 19, 2015). Petitioner did not file a motion for rehearing or motion for en banc reconsideration, opting to come to this Court directly.

This Court granted petitioner until July 20, 2015, to file his petition for discretionary review. This petition is either filed by that date, or is filed within 15 days afterward and accompanied by a motion requesting a slight time extension.

## GROUND FOR REVIEW

**The panel majority erred in holding that the trial court reasonably denied petitioner's motion for new trial despite a record clearly showing: (1) his lawyer had an actual conflict of interest; and (2) his lawyer acted contrary to petitioner's interests in at least four instances.**

———————◆———————

**ARGUMENT**

The panel majority erred in a manner compelling discretionary review followed by a new trial. This case presents an egregious situation where petitioner's counsel represented him for over a year, contemporaneously represented the complainant's father in other criminal actions, failed to fully advise appellant about the nature of the potential conflict, and then counseled appellant to plead guilty despite admittedly performing *no* investigation into the facts of this case. Petitioner's plea was involuntary due to his counsel's conduct, warranting a new trial.

## I. FACTS LEADING TO MOTION FOR NEW TRIAL

In early May, 2012, petitioner's niece made outcry to her mother that petitioner sexually molested her (RR1 at 35-36). On the same day as the outcry, petitioner's brother (the complainant's father), Jose Luis Quintero, called their mutual sister Veronica Pina and told her that if petitioner returned to the house he would kill petitioner (RR1 at 32-33, 35-36).

Petitioner hired defense lawyer Rigoberto Rodriguez to represent him (CR at 102-04; RR1 at 13-15, 33; RR2 at Defense Exhibits 1, 2). Rodriguez did no investigation (RR1 at 48-51).

On November 16, 2012, the State charged petitioner with aggravated sexual assault of a child, namely, his brother Jose Luis's daughter (CR at 5).

On January 21, 2013, the State charged petitioner's brother Jose Luis with the felony crime of cruelty to animals (CR at 56-58). On February 1, 2013, the State charged Jose Luis with committing the felony crime of assault against his wife (the complainant's mother) Myrma Quintero (CR at 59-61).

On February 7, 2013, defense counsel Rodriguez went to court and announced that he would defend Jose Luis against the cruelty to animals and family assault charges (CR at 62-69).

On February 15, 2013, Rodriguez went to court and announced that he would defend petitioner against the aggravated sexual assault charge (CR at 12).[1]

On April 15, 2013, Rodriguez had petitioner and his brother Jose Luis sign a "Waiver of Potential Conflict of Interest," and then presented the motion to the court (CR at 14-15, 70-74). Petitioner's trial judge denied the waiver (CR at 14-15, 70-74).

A grand jury indicted petitioner on May 3, 2013, and indicted Jose Luis on both charges on May 31, 2013 (CR at 19, 83-91).

---

[1] The contract petitioner signed for "pre-trial services," however, appears to be dated February 25, 2013 (CR at 105-08).

Petitioner next appeared in court on June 4, 2013 (CR at 18). A visiting judge was presiding, and petitioner waived his right to a jury and pled guilty to a negotiated six-year prison sentence (CR at 21-36).

## II. FACTS FROM HEARING ON PETITIONER'S MOTION FOR NEW TRIAL

Petitioner filed a motion for new trial alleging, *inter alia*, that Rodriguez counseled him to plead guilty when he had an actual conflict of interest and had acted contrary to petitioner's interests.

### *Petitioner's Testimony*

Petitioner testified that he was unaware if Rodriguez did any work on his case between the outcry and the charge being filed (RR1 at 13-14). He was aware that Rodriguez was representing both him and his brother and he signed a waiver of potential conflict of interest—but did so because Rodriguez told him it was merely a "formality" for the judge (RR1 at 15). Rodriguez did not discuss what the potential conflict was and did not tell petitioner that the judge denied the motion (RR1 at 15-16).

Regarding his knowledge of the case at the time he pled guilty, petitioner testified that he was not aware that:

- The complainant had given many different interviews;

- The complainant initially could not describe how the ultimate allegation happened;

- The complainant first said petitioner did not penetrate her anus, but later said he did;

- At one point the complainant said petitioner placed his penis on her through her clothing;

- The complainant gave inconsistent statements about whether she had seen appellant's penis;

- At one point the complainant said she never saw petitioner's penis; and

- The complainant said petitioner held her arms behind her back while tickling her.

(RR1 at 16-19).

Petitioner testified that he is innocent of this charge, but that he pled guilty because Rodriguez said he would probably be convicted at trial and get a life sentence...or he could accept the State's six-year offer (RR1 at 19-20). Rodriguez told petitioner he had to decide right away (RR1 at 19-20). Fearing a life sentence, petitioner pled guilty despite the visiting judge admonishing him over the full punishment range (RR1 at 20, 25-26).

### *Jose Luis Quintero's Testimony*

The complainant's father testified that he was at work one afternoon when his wife, Myrma, called and said that their daughter accused petitioner of doing something [sexual] to her (RR1 at 35-36).

Jose Luis was furious and called his sister, Veronica Pina, to tell her that if petitioner returned to his house then he would kill petitioner (RR1 at 36).[2]

The State later charged Jose Luis with cruelty to animals and family assault and he hired Rodriguez to defend him (RR1 at 36-37). Rodriguez told him there could be a big conflict of interest and he probably should not represent them both, but that the brothers could sign a paper so it would not be a problem (RR1 at 37-38). Rodriguez did not go specify the nature of the conflict (RR1 at 37-38).[3]

At some point Jose Luis told Rodriguez that he no longer thought petitioner was guilty (RR1 at 38-39). He also told Rodriguez that the District Attorney's Office had called wanting to talk to him about petitioner's case—but Rodriguez told Jose Luis that it was not in his best interests to tell the District Attorney's Office that petitioner was innocent because CPS might try and take his children away [for seeming to protect someone that they thought abused his child] (RR1 at 39-40). When asked specifically what Rodriguez said, Jose Luis testified that Rodriguez told him, "Do not talk to the DA's Office and tell them that you think he's innocent because you may

---

[2] Pina also testified to this effect (RR1 at 32-33).

[3] Pina also testified that Rodriguez did not go into detail about potential conflicts of interest when she talked to him; he merely said he could represent both brothers (RR1 at 31, 33-34).

lose your kids" (RR1 at 40). Jose Luis called the District Attorney's Office and told them that he just wanted the "system" to take care of it (RR1 at 41).[4]

### Rigoberto Rodriguez's Testimony

Defense counsel Rigoberto Rodriguez testified that petitioner hired him on May 3, 2012, for an "investigation" concerning the sexual assault outcry (RR1 at 47). From May, 2012, until petitioner was formally charged in November, 2012, Rodriguez did nothing more than "be on call" in case the police wanted to talk to petitioner (RR1 at 48). He testified that he discussed a polygraph with petitioner but that petitioner did not want to take one (RR1 at 48-49). Rodriguez did not talk to any witnesses and did not know the specifics of the outcry (RR1 at 50-51).

When petitioner was charged in November, 2012, Rodriguez applied the prior fee paid (for investigation) to a new legal services contract (RR1 at 51). He then accepted representation for petitioner's brother Jose Luis (RR1 at 52-53). Rodriguez testified that he explained the potential for a conflict of interest to the family and said that both brothers had to sign a waiver of that potential conflict (RR1 at 52-55). Rodriguez explained that he would never have tried both cases—if necessary he would have tried petitioner's and then

___

[4] Jose Luis testified that he still felt petitioner was innocent of this allegation (RR1 at 44-45).

withdrawn from Jose Luis's before Jose Luis's cases went to trial (RR1 at 53, 59-60). Rodriguez explained, "It's my choice to take it to trial or not" (RR1 at 53).

Rodriguez explained that he filed the motion to waive potential conflict of interest with the court but did not secure a ruling on it (RR1 at 58). The court's staff called him later that day and explained that the judge denied it (RR1 at 58). Rodriguez approached the judge the next day and the judge told him that the motion was denied, but Rodriguez could still represent petitioner if he wanted to (RR1 at 58).

Rodriguez testified that he filed a grand jury packet containing: (1) records related to petitioner's military service and the honorable discharge therefrom; and (2) a "proffer" of evidence in the form of a letter from Rodriguez stating that petitioner maintained his innocence and would testify in the grand jury (RR1 at 56). Rodriguez stated that this was a lie to the grand jury—it was merely a "proffer" from Rodriguez and that petitioner never really maintained his innocence (RR1 at 78-79). Nonetheless, the grand jury chose not to hear from petitioner (RR1 at 56).

Regarding his work defending petitioner, Rodriguez testified that he did not do any work because his duty to investigate or prepare a defense does not arise until: (1) the case is indicted; and (2)

17

the client rejects a plea bargain and demands a trial (RR1 at 60). Rodriguez stated, "[Investigating the case] would have been the next phase after the indictment," and, "[i]t didn't develop to that stage where I could have done that because he took the plea" (RR1 at 60). Although he represented petitioner for over a year, Rodriguez stated, "What happened here is he took the plea prior to me doing that. That was the next phase when his case is set for trial" (RR1 at 60). As a result, Rodriguez had never:

- Gone to the District Attorney's Office to review their file;

- Reviewed the complainant's outcry statement;

- Reviewed any of the multiple interviews that law enforcement did with the complainant;

- Reviewed any interviews by the complainant's parents;

- Talked to any of the witnesses about the case against petitioner[5]; or

- Talked to Jose Luis about a statement he made to investigators that he was previously a victim of sexual assault.

---

[5] Those witnesses included the complainant, the complainant's mother Myrma, the complainant's grandmother Armadina Quintero, the complainant's father Juan Quintero, Sr., petitioner's brother-in-law Jesus Pina, or family friend Johnny Villarreal (RR1 at 69). Most gave affidavits in support of petitioner's motion for new trial (RR2 at Defense Exhibit 1).

(RR1 at 56, 60, 65-67, 70-71). Rodriguez was unaware whether he had reviewed any medical records in this case (RR1 at 67).

When asked, "So, as you sit here today, you don't know whether or not she said on one of those tapes, he didn't do it?" Rodriguez responded, "It doesn't matter. He's indicted. The next thing is trial. He didn't want to go to trial. He's not trying the case to me. It's whether he wants to go to trial or not. That's the next step" (RR1 at 65).

When asked whether the complainant gave statements that are inconsistent with the probable cause affidavit used by the officer to secure petitioner's arrest, Rodriguez replied, "[it] doesn't matter. He's got to be willing to go to trial. I mean, what difference—I'm not the jury. He has to want to go to trial" (RR1 at 67).

Rodriguez was unaware that Jose Luis initially threatened to kill petitioner and denied that Jose Luis ever told him that he felt petitioner was innocent (RR1 at 56, 78-79). He admitted Jose Luis called him concerning the District Attorney's attempt to discuss petitioner's case, but stated that he just told Jose Luis to "tell them whatever you want" (RR1 at 68-69).

Regarding petitioner's guilty plea, Rodriguez testified that he showed up in court on June 4th and the prosecutor on petitioner's case was about to be replaced by a new, as yet unidentified, prosecutor (RR1 at 73-75). The prosecutor also told Rodriguez that they

19

could file two more cases against petitioner and then ask the Court to stack them[6] (RR1 at 74). Rodriguez told appellant that a jury might acquit him, might give him 5 years in prison, or might give him life in prison (RR1 at 73-74). He told petitioner that the District Attorney could file more charges and then ask the judge to stack the sentences (RR1 at 74). He also told petitioner that if the State brought witnesses who could testify as to each of the indictment's allegations then the State would have a "strong case" against him[7] (RR1 at 78). Rodriguez conceded that he had no idea whether the State's case was actually strong or weak—stating, "I'll never know because he pled" (RR1 at 78). Ultimately, Rodriguez testified that petitioner wanted probation but took the six-year plea bargain deal because probation was not an option[8] (RR1 at 75).

### The Trial Court's Ruling

Presiding Judge Marc Carter denied Rodriguez's motion to waive the "potential" conflict of interest in this case. He was absent for pe-

---

[6] Given Rodriguez's unfamiliarity with the facts, he must have taken the prosecutor's statements at face value.

[7] Nonetheless, Rodriguez testified that in his opinion it did not matter whether the State's case was strong or weak because petitioner chose not to go to trial (RR1 at 76-77).

[8] Rodriguez testified that the prosecutor refused to waive her right to a jury trial if petitioner intended to plead guilty without an agreed punishment recommendation and request deferred adjudication community supervision from the judge (RR1 at 75).

titioner guilty plea and sentencing, but presided over his hearing on the motion for new trial.

At the close of evidence on this hearing, Judge Carter stated that he felt it unethical for a trial court to approve a conflict of interest, but stated that he lacked the authority to remove a lawyer from a case on that bases (admonishing that it's the lawyer's "bar card on the line") (RR1 at 81-82).

Judge Carter also agreed that a conflict existed in this case[9] (RR1 at 83). Judge Carter agreed with the defense's arguments both "morally and ethically" (RR1 at 87).

Nonetheless, Judge Carter denied the motion in its entirety because "sometimes people plead guilty to things that they didn't do because they believe it's in their best interest to do so because they rather take six years than fifty" (RR1 at 87). Thus, the judge found that despite an actual conflict of interest, petitioner's motion was ill-taken because an innocent person can waive their right to a jury and plead guilty in order to minimize their risk at a larger sentence for a crime they did not commit—"as long as you do that knowingly and intelligently" (RR1 at 87).

---

[9] Judge Carter stated that it was a conflict for Rodriguez to also represent a witness who could testify against petitioner, but did not elaborate on whether he felt a conflict existed on other grounds as well (RR1 at 84).

**III. Ground For Review — The panel majority erred in holding that the trial court reasonably denied petitioner's motion for new trial despite a record clearly showing: (1) his lawyer had an actual conflict of interest; and (2) his lawyer acted contrary to petitioner's interests in at least four instances.**

The panel majority upheld the trial court's decision to deny petitioner a new trial, rationing that, although an actual conflict of interest might exist: (1) Rodriguez testified that Jose Luis never told him he thought petitioner was innocent; (2) Rodriguez testified that he did not dissuade Jose Luis from talking with the prosecutor about petitioner's case; and (3) Rodriguez had no duty to advance Jose Luis as a helpful witness since he testified that he had no idea Jose Luis was helpful. *Quintero*, No. 14-13-00559-CR, at 8-12, 2015 WL 2405549. The Court also noted that petitioner was aware that Rodriguez was representing Jose Luis, and that the plea admonishments established a prima facie case that he pled guilty knowingly and voluntarily. *Quintero*, No. 14-13-00559-CR, at 8-13, 2015 WL 2405549.

A. *The right to unburdened counsel.*

The right to counsel guarantees a criminally accused an attorney unburdened by an actual conflict of interest. *See Strickland v. Washington*, 466 U.S. 668, 692 (1984). An actual conflict exists if counsel

"'is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest.'" *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (*quoting Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). Actual conflicts of interest can occur in different ways. For example, when an attorney represents two clients whose interests in the outcome of a matter are different, an actual conflict of interest exists for the attorney. *See Ramirez v. State*, 13 S.W.3d 482, 486–87 (Tex. App.—Corpus Christi 2000, pet. dism'd). Another is when the lawyer is required to make a choice between advancing his own interests and those of the client. *Acosta*, 233 S.W.3d at 355.

When there is an actual conflict, the trial court must hold a hearing to ensure that the defendant: (1) is aware of the conflict; (2) realizes the potential hazard to his defense from using the conflicted attorney; and (3) knows his right to obtain other counsel. *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992) (synthesizing the rule from *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975)).

A defendant is entitled to a new trial if he can demonstrate that an actual conflict of interest existed and "trial counsel actually acted on behalf of those other interests during the trial." *Acosta*, 233 S.W.3d at 355 (*citing Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100

S.Ct. 1708 (1980)). Such a showing indicates that the actual conflict adversely affected the judgment, which mandates a new trial. *See Greig*, 967 F.2d at 1024.

B. *The only reasonable view of this record shows that counsel labored under a conflict and acted adversely to petitioner's interest, as shown by the dissent.*

The trial court expressly found that an actual conflict of interest existed. Scant evidence exists showing petitioner was aware of the actual conflict (only that he signed a waiver of any *potential* conflicts) and *no* evidence shows that petitioner: (1) realized the potential hazard to his defense from using the conflicted attorney; and (2) knew his right to obtain other counsel. *Greig*, 967 F.2d at 1022. Thus, the trial court's decision to deny petitioner's motion for new trial *for a different reason*[10] was so clearly wrong as to fall outside the zone within which reasonable persons might disagree. *Smith*, 286 S.W.3d at 339; *Herndon*, 215 S.W.3d at 906.

Moreover, even considering the evidence in the light most favorable to the trial court's ruling (thereby effectively ignoring Jose Luis's compelling testimony), Rodriguez acted based on the conflict and contrary to petitioner's interests in at least four concrete re-

---

[10] That innocent people can plead guilty to avoid great risk, so long as their decision is free and voluntary.

24

spects. First, Rodriguez testified that he admitted he could not represent both brothers at a trial and, thus, one of them would have to accept a plea bargain. Thus, Rodriguez acted to pressure petitioner into a plea bargain rather than jeopardize his continued representation.

Second, Rodriguez testified that he never told petitioner that the trial court denied his motion to waive the conflict. Thus, Rodriguez acted pursuant to his own business interests rather than petitioner's interest in knowing about the conflict, which would in turn have informed petitioner's plea bargain considerations.

Third, Rodriguez testified that, when he learned the prosecutor wanted to talk to Jose Luis about petitioner's case, he simply told Jose Luis to "tell them whatever you want" without further advice. This violated Rodriguez's obligation to investigate the State's case, ferret out exculpatory and/or mitigating evidence, and advance that evidence to petitioner's benefit.[11]

Finally, Rodriguez testified that he performed no investigation into the State's case, yet advised petitioner to plead guilty despite knowing nothing about his case. This clearly violates an attorney's duty to his client, and the only logical motive would be for Rodri-

---

[11] The duty to investigate includes the duty to locate exculpatory witnesses. *Gray v. Lucas*, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982); *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 236 (7th Cir. 2003).

guez to end the case quickly, eliminating any conflict issue and allowing him to continue representing both defendants.

Based on the above, "[e]ven if the trial court believed counsel's testimony and disbelieved the testimony of both appellant and the father, the undisputed evidence shows the conflicting interests colored counsel's actions." *Quintero*, No. 14-13-00559-CR, at 7, 2015 WL 2405549 (Frost, C.J., dissenting).

The panel majority erred, and petitioner should receive a new trial.

———◆———

## PRAYER FOR RELIEF

For the reasons described above, this Court should grant discretionary review, sustain petitioner's grounds for review, reverse the Court of Appeals' judgment, and remand the case to the trial court for a new trial.

Respectfully submitted,

**SHELLIST, PEEBLES & MCALISTER, L.L.P.**
By:

/s/ Peyton Z. Peebles III
_____
**PEYTON Z. PEEBLES III**

405 Main Street, Suite 200
Houston, TX. 77002
Tel:    713-715-4500
Fax:    713-715-4505
Email: peebles@texaslegalteam.net
SBOT: 24013307
SPN:   01759419

*Counsel for Petitioner*

---◆---

**CERTIFICATE OF COMPLIANCE**

(a) This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because it was produced on a computer and contains 3,465 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

(b) This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a proportionately spaced typeface using Ingeborg 14-point font in text and Ingeborg 12-point font in footnotes.

/s/ Peyton Z. Peebles III

**PEYTON Z. PEEBLES III**

———————◆———————

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument was served upon the parties designated below by e-filing on July 15, 2015.

**Clinton A. Morgan**
Harris County Assistant District Attorney
1201 Franklin Street, Suite 600
Houston, Texas 77002
*(service by e-file to morgan_clinton@dao.hctx.net)*

**Lisa C. McMinn**
Texas State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711
*(service by e-file to information@spa.texas.gov)*

/s/ Peyton Z. Peebles III
_____
**PEYTON Z. PEEBLES III**

**Appendix**

*Quintero v. State*, No. 14-13-00559-CR, 2015 WL 2405549 (Tex. App.—Houston [14th Dist.] May 19, 2015)

2015 WL 2405549
Only the Westlaw citation is currently available.
Court of Appeals of Texas,
Houston (14th Dist.).

Juan Quintero, Appellant
v.
The State of Texas, Appellee

NO. 14–13–00559–CR | Majority and Dissenting
Opinions filed May 19, 2015.

**Synopsis**
**Background:** Defendant was convicted on guilty plea in
the 228th District Court, Harris County, of aggravated
sexual assault of child, and his motion for new trial was
denied. Defendant appealed.

**Holdings:** The Court of Appeals, J. Brett Busby, J., held
that:

[1] defendant was not entitled to new trial based on claim
of ineffective assistance of counsel due to actual conflict
of interest;

[2] guilty plea was knowing, voluntary, and intelligent,
despite conflict of interest; and

[3] interests of justice was not independent basis for
withdrawal of guilty plea based on defendant's claim that
he was denied effective assistance of conflict-free
counsel.

Affirmed.

Kem Thompson Frost, C.J., filed dissenting opinion.

West Headnotes (10)

[1]    **Criminal Law**
      Incompetency or neglect of counsel for
      defense

      Defendant was not entitled to vacatur of
      conviction on guilty plea to aggravated sexual

assault of child and new trial based on claim of
ineffective assistance of counsel due to actual
conflict of interest arising out of counsel's
simultaneous representation of defendant's
brother, who was complainant's father, in
unrelated matter, despite evidence that trial court
had not approved defendant's conflict waiver,
and brother's testimony that he told counsel that
he did not believe defendant was guilty and that
counsel advised him not to tell trial court
because brother could lose his children; counsel
testified that brother never told him that he
believed defendant was innocent, that, although
brother had approached him about what to tell
prosecutors regarding defendant's case, he
denied advising brother to remain quiet about
his changed attitude toward defendant in order
to advance brother's own interests, and that he
instead advised brother to tell prosecutor
whatever brother wanted to tell him. U.S. Const.
Amend. 6.

Cases that cite this headnote

[2]    **Criminal Law**
      Adequacy of Representation

      The Constitution guarantees a criminal
      defendant effective assistance of counsel. U.S.
      Const. Amend. 6.

      Cases that cite this headnote

[3]    **Criminal Law**
      Prejudice and harm in general

      To prevail on a claim of ineffective assistance of
      counsel based on a conflict of interest, the
      appellant must prove by a preponderance of the
      evidence that (1) his trial counsel had an actual
      conflict of interest, and (2) the conflict actually
      colored his trial counsel's actions during his
      representation of appellant. U.S. Const. Amend.
      6.

Cases that cite this headnote

**[4]** **Criminal Law**
🔑Prejudice and harm in general

An "actual conflict of interest" exists, as required to support a claim of ineffective assistance of counsel based on a conflict of interest, if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests, including, perhaps, his own, to the detriment of his client's interest; in other words, appellant must show that his trial counsel actually acted on behalf of those other interests, and that he was adversely impacted as a result. U.S. Const. Amend. 6.

Cases that cite this headnote

**[5]** **Criminal Law**
🔑Presumptions and burden of proof

A claim of ineffective assistance of counsel based on an actual conflict of interest will fail if (1) no evidence has been presented on the issue, or (2) the evidence relevant to the issue is in perfect equipoise. U.S. Const. Amend. 6.

Cases that cite this headnote

**[6]** **Criminal Law**
🔑Voluntary Character

Guilty plea to aggravated sexual assault of child was knowing, voluntary, and intelligent, despite conflict of interest arising out of counsel's dual representation of defendant's brother, who was complainant's father, and counsel's alleged pressure for defendant to plead guilty to avoid potential life sentence if he went to trial; trial court gave defendant all requisite admonishments orally and in writing, defendant signed written admonishments and initialed several paragraphs specifically acknowledging

that he understood charge against him and consequences of guilty plea, and that he had fully consulted with his attorney before signing admonishments and agreeing to plea, and defendant was aware of conflict of interest. U.S. Const. Amend. 6.

Cases that cite this headnote

**[7]** **Constitutional Law**
🔑Guilty pleas

Due process requires that a guilty plea be entered knowingly, intelligently, and voluntarily. U.S. Const. Amend. 14.

Cases that cite this headnote

**[8]** **Criminal Law**
🔑Arraignment and plea

In considering the voluntariness of a guilty plea, an appellate court examines the record as a whole.

Cases that cite this headnote

**[9]** **Criminal Law**
🔑Evidence as to voluntariness

In considering a challenge to the validity of a guilty plea, evidence that a defendant was admonished by the trial court creates a prima facie showing that the guilty plea was made voluntarily and knowingly, and the burden then shifts to the defendant to show that he entered the plea without understanding the consequences of his action.

Cases that cite this headnote

[10]    **Criminal Law**
        👉Grounds for Allowance

Interests of justice was not independent basis for withdrawal of guilty plea and new trial on charge for aggravated sexual assault of child based on defendant's claim that he was denied effective assistance of conflict-free counsel, after trial court denied motion for new trial on claim that he was denied effective assistance of counsel. U.S. Const. Amend. 6.

Cases that cite this headnote

On Appeal from the 228th District Court, Harris County, Texas, Trial Court Cause No. 1368190

**Attorneys and Law Firms**

Peyton Peebles III, Houston, TX, for Appellant.

Clinton Morgan, Houston, TX, for The State of Texas.
Panel consists of Chief Justice Frost and Justices Christopher and Busby

**OPINION**

J. Brett Busby, Justice

**\*1** Appellant Juan Quintero pled guilty to the offense of aggravated sexual assault of a child as part of a plea-bargain agreement with the State. *See* Tex. Penal Code Ann. § 22.021 (West 2011). The trial court found appellant guilty and, in accordance with the plea bargain, sentenced him to serve six years in prison. Appellant retained new counsel and filed a motion for new trial alleging that his trial counsel was ineffective. The trial court denied appellant's motion.

Appellant contends in a single issue on appeal that the trial court abused its discretion when it denied his motion for new trial. Appellant makes three separate arguments within his single issue. Appellant initially contends that his trial counsel was ineffective because he advised appellant to plead guilty when counsel had an actual

conflict of interest. We reject this argument because at least one reasonable view of the record evidence supports an implied finding by the trial court that appellant suffered no adverse effect as a result of the actual conflict of interest.

Appellant next argues that his guilty plea was not voluntary due to counsel's ineffective assistance. We overrule appellant's second contention because the evidence introduced during the hearing on the motion for new trial supports an implied finding by the trial court that appellant knowingly, intelligently, and voluntarily agreed to accept the State's plea bargain and plead guilty.

Finally, appellant argues that the interest of justice entitles him to a new trial. We overrule this argument because the interest of justice is not an independent basis for a trial court to grant a criminal defendant a new trial, and the independent legal ground asserted in support of appellant's interest-of-justice argument is identical to one raised, and rejected, in his first two arguments. We therefore affirm the trial court's judgment.

**BACKGROUND**

In 2012, appellant's niece made an outcry that appellant had sexually assaulted her in several ways. Appellant retained attorney Rigoberto Rodriguez as his trial counsel. Appellant was eventually indicted for the offense. At the first trial setting after his indictment, the State offered appellant a plea bargain of six years' confinement. Appellant accepted the plea bargain. After admonishing appellant regarding his decision to waive his rights, the trial court accepted his plea, found him guilty of the charged offense, and sentenced him to the agreed six-year prison term.

Appellant then retained new counsel, who filed a motion for new trial. The motion asserted that appellant was entitled to a new trial for three reasons: (1) Rodriguez rendered ineffective assistance because he counseled appellant to accept the State's plea bargain when he had an actual conflict of interest; (2) appellant's guilty plea was involuntary because Rodriguez was ineffective; and (3) the interest of justice required that he be granted a new trial.[1] The trial court conducted a hearing on appellant's motion during which several witnesses testified, including appellant, appellant's brother, and Rodriguez.

**A. Appellant's testimony during the new trial hearing**

**\*2** Appellant testified that his parents located Rodriguez and hired him on appellant's behalf. Appellant then testified that he did not know what, if any, work Rodriguez did on his case between the complainant's outcry and the charge being filed against him. Appellant testified he was aware that Rodriguez was also representing his brother Jose Luis Quintero—the father of the complainant in appellant's sexual assault case—in two unrelated criminal matters. Appellant acknowledged that he had signed a waiver of potential conflict of interest, but explained that he did so because Rodriguez had told him it was a formality for the judge. According to appellant, Rodriguez did not discuss what the potential conflict was and did not tell him that the trial court ultimately denied a motion Rodriguez filed seeking the court's approval of the conflict waiver.

Appellant testified that at the time he accepted the plea bargain, he was unaware of the evidence the State possessed against him. He went on to testify that he is innocent of the sexual assault charge, but he pled guilty because Rodriguez told him that if he did not accept the State's offer, he would probably be convicted at trial and would receive a life sentence. Appellant testified that he asked Rodriguez for time to consider the State's offer, but Rodriguez told appellant he had to decide right away. Appellant went on to testify that he pled guilty because his only other choice seemed to be to lose at trial and get a life sentence. The record shows that the visiting judge who accepted appellant's plea explained the full punishment range during the plea hearing.[2]

**B. Jose Luis's testimony**
Jose Luis testified that he was very upset and angry when he first learned about his daughter's outcry accusing appellant of sexual assault. Jose Luis went on to admit that he was charged with cruelty to animals and family assault after appellant was charged with sexual assault. According to Jose Luis, his parents hired Rodriguez to defend him in those two cases. Jose Luis testified that Rodriguez informed him there could be a big conflict of interest if he represented both brothers, that he probably should not represent both, but that the brothers could sign a paper so it would not be a problem. According to Jose Luis, Rodriguez did not specify the nature of the conflict of interest.

Jose Luis testified he eventually told Rodriguez that he no longer believed his brother was guilty. Jose Luis also informed Rodriguez that the prosecutor's office had called him wanting to discuss appellant's case and his thoughts on the appropriate punishment for appellant. According to Jose Luis, Rodriguez told him that it was

not in his best interest to tell the prosecutors he now believed appellant was innocent. Rodriguez explained that it might result in his children being taken away based on a belief that he was trying to protect his brother rather than his daughter. When asked specifically what Rodriguez had told him, Jose Luis testified that Rodriguez said: "do not talk to the DA's Office and tell them that you think he's innocent because you may lose your kids." Jose Luis testified that he called the prosecutor's office back and told them that he just wanted the "system" to take care of it.

**C. Veronica Pina's testimony**
A sister of appellant and Jose Luis, Veronica Pina, also testified during the hearing. She explained that she was involved in the hiring of Rodriguez and discussed his representation of her brothers. She testified that Rodriguez did not go into detail about potential conflicts of interest when she talked to him. According to Pina, Rodriguez said that he could represent both brothers.

**D. Trial counsel's testimony**
**\*3** Trial counsel Rodriguez testified that appellant hired him in May 2012 for an "investigation" concerning the sexual assault outcry. From that point until appellant was formally charged in November 2012, Rodriguez testified that he did nothing more than "be on call" in case the police wanted to talk to appellant. Rodriguez admitted that he did not talk to any witnesses and did not know the specifics of the outcry.

When appellant was charged in November 2012, Rodriguez applied the prior fee paid (for investigation) to a new legal services contract. He testified that after this occurred, he agreed to represent Jose Luis in his criminal cases. Rodriguez testified that he explained the potential for a conflict of interest to the family and said that the brothers had to sign a waiver of the potential conflict before he would represent both. Rodriguez testified that he explained the potential conflict to both brothers. Rodriguez went on to explain that he would never have tried both cases; if necessary, he would have tried appellant's case and then withdrawn before Jose Luis's cases went to trial. Rodriguez testified that it was his choice whether to take them to trial.

Rodriguez explained that he filed a motion to waive potential conflict of interest. The trial court's staff called him later that day and told him the judge had denied the motion. Rodriguez testified that he approached the trial judge the next day and the judge told him that the motion

was denied, but Rodriguez could still represent both appellant and his brother if he wished. Rodriguez went on to testify that he did not know whether an actual conflict of interest existed.

Rodriguez was also asked about his interactions with Jose Luis regarding appellant's case. Rodriguez denied that Jose Luis ever told him that he now believed appellant was innocent. Rodriguez admitted during his testimony that Jose Luis had contacted him concerning the prosecutor's attempt to discuss appellant's case, but Rodriguez asserted that he told Jose Luis to "tell [the prosecutor] whatever you want to tell [him]." Rodriguez also denied advising Jose Luis not to inform the prosecutor about his belief that appellant was innocent because doing so might endanger Jose Luis's access to his children.

Regarding appellant's guilty plea, Rodriguez testified that he showed up in court on June 4, 2013, and the prosecutor on appellant's case told him he was about to be replaced by a new prosecutor yet to be identified. According to Rodriguez, the departing prosecutor told him that the new prosecutor could decide to file two more charges against appellant and then ask the trial court to stack the sentences. Rodriguez testified that during his discussions with appellant regarding the State's plea-bargain offer, he told appellant that a jury might acquit him, might find him guilty and sentence him to five years in prison, or might sentence him to life in prison. Rodriguez also testified that he informed appellant about his conversation with the departing prosecutor. Rodriguez testified that he told appellant exactly what the prosecutor had told him regarding the possibility of more charges and the stacking of any resulting prison terms. Rodriguez also testified he told appellant that if the State brought witnesses who could testify as to each of the indictment's allegations, then the State would have a strong case against him. Rodriguez then conceded that, at the time of the plea deal, he had no idea whether the State's case against appellant was actually strong or weak. Ultimately, Rodriguez testified that appellant wanted a deal with probation but decided to take the offered plea bargain because the State was not willing to offer probation. Rodriguez also emphasized repeatedly that appellant was not willing to go to trial.

### E. The trial court's denial of appellant's motion for new trial
**\*4** At the end of the hearing, appellant's new counsel argued that it was unethical for Rodriguez to have represented Jose Luis at the same time that he represented appellant because Jose Luis could have been called as a witness against appellant. He went on to ask the trial court to grant appellant a new trial.

The trial court explained that he believed it unethical for a court to approve a conflict of interest, but that he lacked the authority to remove a lawyer from a case based on a conflict of interest. The court went on to find that a conflict existed in this case. The court stated that he agreed with appellant's arguments both "morally and ethically." Nevertheless, the court denied appellant's motion in its entirety, stating: "sometimes people plead guilty to things that they didn't do because they believe it's in their best interest to do so because they [would] rather take six years than fifty. And my understanding of the law is, as long as you do that knowingly and intelligently, that's what it's going to be." This appeal followed.

### ANALYSIS

Appellant contends that the trial court abused its discretion when it denied his motion for new trial. Within that single issue, appellant makes three separate arguments, which we address in turn.

### I. Appellant has not shown that the trial court abused its discretion by refusing to grant him a new trial based on counsel's alleged conflict of interest.
[1] Appellant's first argument is that the trial court abused its discretion when it denied his motion for new trial because he was denied effective assistance of counsel due to his trial counsel's actual conflict of interest.

### A. Standard of review and applicable law
We review a trial court's decision on a motion for new trial for an abuse of discretion. *State v. Herndon,* 215 S.W.3d 901, 906 (Tex.Crim.App.2007). Under this standard, an appellate court should reverse the trial court's ruling only if it was clearly erroneous and arbitrary, such as when no reasonable view of the record could support the decision under review. *Odelugo v. State,* 443 S.W.3d 131, 137 (Tex.Crim.App.2014). In the absence of express factual findings, we assume that the trial court made implicit findings of fact that support its ruling. *Johnson v. State,* 169 S.W.3d 223, 239 (Tex.Crim.App.2005). The record on appeal must be inspected from every reasonable vantage in the light most favorable to the trial court's ruling, and found to be

deficient, before it may be overturned as an abuse of the trial court's discretion. *Odelugo,* 443 S.W.3d at 138. If one reasonable view of the record would support the trial court's denial of a motion for new trial, the decision must be affirmed on appeal. *See id.*

[2] [3] [4] [5]The Constitution guarantees a criminal defendant effective assistance of counsel. *Ex parte Moore,* 395 S.W.3d 152, 157 (Tex.Crim.App.2013). To prevail on his conflict-of-interest ineffectiveness claim, appellant must prove by a preponderance of the evidence that (1) his trial counsel had an actual conflict of interest, and (2) the conflict actually colored his trial counsel's actions during his representation of appellant. *Odelugo,* 443 S.W.3d at 136. "An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997). In other words, appellant must show that his trial counsel actually acted on behalf of those other interests, and he was adversely impacted as a result. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Appellant's claim will fail if (1) no evidence has been presented on the issue, or (2) the evidence relevant to the issue is in perfect equipoise. *Odelugo,* 443 S.W.3d at 136–37.

**B. Appellant did not prove by a preponderance of the evidence that he was adversely impacted by any conflict of interest.**

**\*5** Even if we assume the existence of an actual conflict of interest, appellant must still establish, by a preponderance of the evidence, that he was adversely impacted by his trial counsel's conflict of interest. Appellant contends he met this burden through: (1) undisputed evidence that Rodriguez represented his brother—the father of the complainant, and therefore a potential material witness against him—while continuing to represent appellant; (2) his brother's testimony that Rodriguez advised him to not tell the prosecutors his belief that appellant had not sexually assaulted his daughter; and (3) his own testimony that Rodriguez pressured him into accepting the State's plea-bargain offer by telling him he would be convicted if he went to trial and would then receive a life sentence. We disagree that, under the appropriate standard of review, appellant has established that the trial court abused its discretion when it denied his motion for new trial based on an actual conflict of interest.

Appellant's first argument consists simply of evidence that the dual representation created an actual conflict of interest. That evidence does not address the second part of the test: whether trial counsel acted on behalf of other interests to appellant's detriment. Our dissenting colleague argues that such an adverse impact has been shown because Rodriguez failed to "disclose to appellant the trial court's conclusion that the dual representation was unethical" and the court's advice that Rodriguez "discontinue the dual representation"—information that would have allowed appellant to make an informed decision about waiver and choice of counsel. *Post,* at 5–6. But there is no evidence that the trial court disclosed any such conclusion or advice to Rodriguez before appellant entered his guilty plea. Rather, the trial court simply denied counsel's motion seeking approval of the waiver appellant had signed, and Rodriguez testified that the trial court said he could still represent both appellant and Jose Luis if he wished.[3]

Appellant's second and third arguments likewise do not demonstrate an adverse effect because they ignore that the evidence regarding Rodriguez's dealings with both Jose Luis and appellant was disputed. Although the brothers each offered testimony that, if believed, could establish an adverse impact on appellant, Rodriguez offered directly contrary testimony. For example, Rodriguez testified that Jose Luis never told him that he now believed appellant was innocent. Although he agreed that Jose Luis had approached him about what to tell the prosecutors regarding appellant's case, he denied advising Jose Luis to remain quiet about his changed attitude toward his brother in order to advance Jose Luis's own interests. Rodriguez testified that he instead advised Jose Luis to "tell [the prosecutor] whatever you want to tell [him]." Our dissenting colleague faults Rodriguez for not attempting to secure a statement from Jose Luis in support of appellant. *Post,* at 8. But according to Rodriguez, he did not know that Jose Luis was now willing to make a supportive statement. This testimony undercuts the dissent's theory that Rodriguez gave this advice to advance Jose Luis's interests to the detriment of appellant.[4]

**\*6** The trial court, as the trier of fact, was entitled to believe Rodriguez's testimony and disbelieve the testimony of both appellant and his brother. *See Odelugo,* 443 S.W.3d at 138 (stating that trial court can choose to disbelieve even uncontroverted testimony if its probative value depends on the credibility of the witness). We conclude the trial judge implicitly did so here. *See Johnson,* 169 S.W.3d at 239. Given the trial court's implicit rejection of the brothers' testimony and acceptance of Rodriguez's, it was within the court's discretion to conclude that appellant failed to show by a preponderance of the evidence that he was adversely

affected by his trial counsel's conflict of interest. *Odelugo,* 443 S.W.3d at 138. Therefore, we hold the trial court did not abuse its discretion when it denied appellant's motion for new trial based on an actual conflict of interest. *Id.*

## II. Appellant has not shown that the trial court abused its discretion by refusing to grant him a new trial on the ground that his guilty plea was not knowingly, intelligently, and voluntarily entered.

[6]In his second argument, appellant claims that the trial court erred when it denied his motion for new trial based on the allegedly involuntary nature of his guilty plea. According to appellant, his plea was involuntary because his attorney rendered ineffective assistance by failing to advise him of the existence of an actual conflict of interest and by pressuring him to take the plea when he told him he faced two choices: pleading guilty with a six-year sentence, or going to trial and being found guilty and sentenced to life in prison. In this argument, appellant makes no reference to the visiting judge's admonishments regarding his decision to plead guilty to the aggravated sexual assault charge. He also does not contend that the admonishments, which are contained in the record, are insufficient.

[7] [8] [9]Due process required that a guilty plea be entered knowingly, intelligently, and voluntarily. *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex.Crim.App.2006). In considering the voluntariness of a guilty plea, an appellate court examines the record as a whole. *Martinez v. State,* 981 S.W.2d 195, 197 (Tex.Crim.App.1998). Evidence that a defendant was admonished by the trial court creates a prima facie showing that the guilty plea was made voluntarily and knowingly. *Id.* The burden then shifts to the defendant to show that he entered the plea without understanding the consequences of his action. *Arreola v. State,* 207 S.W.3d 387, 391 (Tex.App.—Houston [1st Dist.] 2006, no pet.).

The record demonstrates that appellant received written admonishments from the visiting judge. Appellant signed those admonishments and initialed several paragraphs specifically acknowledging that he understood the charges against him and the consequences of a guilty plea, and that he had fully consulted with his attorney before signing the admonishments and agreeing to the plea. The record also demonstrates that the visiting judge orally admonished appellant regarding his decision to plead guilty. Therefore, there is a prima facie showing that appellant entered his guilty plea knowingly, intelligently, and voluntarily, and appellant had the burden to show the trial court that his plea was nevertheless involuntary. *See*

*Martinez,* 981 S.W.2d at 197.

Attempting to meet this burden, appellant relies on his testimony that his attorney had not advised him of the existence of an actual conflict of interest before he agreed to plead guilty and had pressured him to take the plea. But there is other evidence in the record that appellant was aware of the conflict. In addition, we have already determined that the trial court could have disbelieved appellant's testimony regarding his trial counsel's handling of the plea bargain and instead believed Rodriguez's testimony that he discussed the State's plea-bargain offer with appellant and that he explained appellant's options prior to appellant's decision to accept the plea. We therefore conclude appellant has not met his burden to demonstrate that his guilty plea was involuntary and, as a result, has not shown that the trial court abused its discretion when it denied his motion for new trial based on this ground.

## III. Appellant has not shown that the trial court abused its discretion by refusing to grant him a new trial in the interest of justice.

*7 [10]In his final argument on appeal, appellant contends the trial court abused its discretion when it refused to grant him a new trial in the interest of justice. The interest of justice is not an independent basis for granting a new trial, however. *State v. Thomas,* 428 S.W.3d 99, 105 (Tex.Crim.App.2014). The Court of Criminal Appeals has held that there must be some legal basis underpinning the grant of a new trial, even when it is sought in the interest of justice. *Id.* As a general rule, a trial court does not abuse its discretion in granting a motion for new trial in the interest of justice if the defendant (1) articulated a valid legal claim in his motion, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the rules of appellate procedure. *State v. Sanders,* 440 S.W.3d 94, 99 (Tex.App.—Houston [14th Dist.] 2013, pet. ref'd).

In an effort to meet these requirements, appellant asserts that the trial court should have granted his motion in the interest of justice for one of the reasons he asserted previously: his trial counsel was ineffective because he pressured him into pleading guilty.[5] We have already addressed, and rejected, this contention as a stand-alone basis for the trial court to grant appellant a new trial. Having done so, we hold this contention also cannot serve as the legal basis underlying the grant of a new trial in the interest of justice. *See id.* at 104 (concluding that one ground did not support new trial because court had already analyzed essentially the same argument under

another ground and concluded it did not support new trial). We therefore hold that the trial court did not abuse its discretion when it denied appellant's motion for new trial based on this ground.

## CONCLUSION

Having addressed each argument raised in appellant's single issue on appeal and concluded that none supports reversal, we overrule that issue and affirm the trial court's judgment.

(Frost, C.J., dissenting).

**Kem Thompson Frost**, Chief Justice, dissenting

Today the court must determine whether appellant Juan Quintero is entitled to a new trial based on his counsel's actual conflicts of interest. Convicted of aggravated sexual assault of a child as part of a plea-bargain agreement with the State, appellant asserts his retained counsel rendered ineffective assistance because the conflicts colored counsel's actions. At the heart of the appeal is appellant's contention that counsel advised appellant to plead "guilty" while laboring under actual conflicts of interest. To decide the issue we must determine the adverse impact, if any, of the conflicts. The majority concludes that appellant suffered no adverse impact and that the evidence supports an implied finding that appellant knowingly, intelligently, and voluntarily entered the plea. I respectfully disagree.

### *Applicable Legal Standard*

In most cases, ineffective-assistance-of-counsel claims are assessed under the familiar two-prong test set out in *Strickland v. Washington,* which requires the appellant to prove that (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different.[1] But, when one asserts that the ineffective assistance derived from a conflict of interest, the appellate court assesses the ineffective-assistance claim under the less-onerous standard articulated in *Cuyler v. Sullivan.*[2]

**\*8** To prevail on his conflict-of-interest ineffectiveness claim, appellant must prove by a preponderance of the evidence that (1) appellant's counsel had an actual conflict of interest and (2) the conflict actually colored counsel's actions while representing appellant.[3] "An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest."[4] In the simplest terms, appellant must show counsel actually acted on behalf of other interests, and that appellant was adversely impacted as a result.[5] To prove an adverse impact, appellant need not show that the conflict changed the outcome[6] or that but for the adverse impact appellant would not have pled "guilty."[7] All that is required is a showing that counsel acted (or chose not to act) to pursue other interests and that appellant thereby suffered some adverse effect.

### *Counsel's Actual Conflicts of Interest*

Appellant's young niece made outcry that appellant had sexually assaulted her. Appellant's counsel represented both appellant and the complainant's father, who is appellant's brother. The father's interests in appellant's case diverged from appellant's interest. While appellant's interest was to minimize adverse consequences of potential conviction and punishment for the charged offense, the undisputed evidence shows that the father's interests were (1) to seek justice for the complainant and against the perpetrator of the crime and (2) to avoid any adverse action from the Texas Department of Family and Protective Services, including action that might jeopardize his rights to possession of his children. The objectives of appellant and the objectives of the father were incompatible from the beginning, but the conflicts became increasingly apparent as the case progressed.

Appellant's interests and the father's interests collided head-on when the father received a call from the District Attorney's Office requesting input on appellant's prospective punishment. The father, in turn, sought counsel's advice regarding the District Attorney's inquiry. In advising the father, counsel found himself between a rock and a hard place—counsel was required to make a choice between advancing appellant's interests on one hand and advancing the father's interests on the other.[8] Whatever choice the lawyer made would promote the interests of one client while compromising the interests of the other.

Up to that point, appellant's counsel had characterized his representation of the two clients as posing only a "potential" conflict despite the facial incompatibility of the clients' respective interests. Counsel was operating under the belief that his clients' divergent interests would lead to an actual conflict only if both cases were tried, and, according to counsel, the outcome was up to him. Appellant's counsel advised both appellant and the father of what counsel described as a "potential" conflict. Counsel then presented both clients with written waivers. Both clients signed the waivers.[9]

**\*9** Appellant's counsel filed appellant's waiver in the trial court, but the trial court refused to approve the waiver of the conflict. According to the trial court, the conflict was unethical.[10] Even assuming (for argument's sake) the accuracy of counsel's early assessment of the simultaneous representation of the two clients as creating only a "potential" conflict, at the point of the District Attorney's inquiry to the father, the dual representation posed an actual conflict of interest. Likewise, when appellant's counsel responded to appellant's request for advice regarding a plea-bargain offer from the State, counsel was acting under an actual conflict of interest. At that point, appellant's counsel was required to make a choice between advancing his own economic interests and advancing appellant's interests. The former could only come at the cost of the latter.

Both the economic-self-interest conflict between counsel and appellant and the divergent-client-interests conflict between appellant and the father required appellant's counsel to choose between opposing interests. The record contains sufficient evidence showing counsel had actual conflicts of interest.[11]

### Actions Colored by Conflicts of Interests

Counsel's conflicts of interest colored his actions during his representation of appellant.[12] Counsel testified that he concluded he could not take both appellant's case and the father's case to trial. In tacit recognition of the actual conflict, counsel admitted that he would have to withdraw from one representation unless at least one of the clients accepted a plea bargain. The evidence shows that this conflict influenced counsel's representation of appellant. After the trial court refused to approve appellant's waiver of the conflict, counsel chose not to disclose that information to appellant. Counsel never informed either of the clients that the trial court had considered the waiver and expressly refused to approve it. Nor did counsel

disclose to appellant the trial court's conclusion that the dual representation was unethical or inform appellant that the trial court advised counsel to discontinue the dual representation. This information was material. Indeed, had appellant known the trial court did not approve of counsel's simultaneous representation of appellant and the father or that the trial court had denounced the representation as unethical, appellant might well have made a different decision about waiver and choice of counsel.

An attorney serving his clients' interests would have disclosed this information to the clients so that the clients could make informed decisions regarding their choice to continue being represented by an attorney with actual conflicts of interest. The only reasonable interpretation of counsel's testimony and the clients' testimony is that counsel briefly informed the clients that there might be a potential conflict of interest, but counsel did not explain the ramifications of any conflict to appellant or advise appellant as to how being represented by an attorney with conflicts of interest might affect the representation appellant was to receive. Because the father's goals and interests were at cross-purposes with what appellant hoped to achieve, the interests of both could not be served by the same counsel at the same time.

The majority emphasizes the trial court's role as the fact-finder and the possibility that the trial court may have discredited the clients' testimony and believed only the attorney's testimony.[13] The majority states that the only evidence that showed counsel's actions were colored by conflicts of interest is disputed. This assessment is incorrect. Even if the trial court believed counsel's testimony and disbelieved the testimony of both appellant and the father, the undisputed evidence shows the conflicting interests colored counsel's actions.

### Economic Self–Interest Conflict

**\*10** Counsel testified that he would have to withdraw, and therefore suffer adverse financial consequences, unless one of the clients pled "guilty." Counsel chose not to advise appellant that the trial court had refused to approve the waiver of the conflict, an action which suggests counsel was motivated to keep the business of both clients or, at least, prevent them from learning the trial court's view of the matter. Counsel's explanation for failing to fully articulate the implications of the conflicts of interest was that, in his view, the conflicts of interest would not be an issue as long as at least one client pled "guilty." Counsel then refrained from taking any action to

investigate the State's case against appellant.[14] When the State offered appellant a plea bargain, counsel advised appellant to plead "guilty" even though counsel did not know anything about the State's case against appellant, including whether it was a weak case or a strong case. Appellant accepted counsel's advice and pled "guilty." In counsel's mind, appellant's "guilty" plea eliminated any conflict of interest and allowed counsel to continue representing both appellant and the father. The evidence shows that counsel's actions and his choices not to act were colored by a conflict between his interest in retaining both clients and appellant's interest in minimizing adverse consequences of conviction and punishment, an interest served by appellant's pleading "guilty" only if the State's case against appellant was strong.

### *Divergent–Client–Interests Conflict*

Counsel's representation of appellant also was colored by a conflict of interest between appellant (the accused) and the father of the accuser. The undisputed evidence shows the District Attorney's Office contacted the father to discuss the father's thoughts on an appropriate punishment for appellant. The father and counsel both testified that the father asked counsel for advice in responding to this prosecutorial inquiry. Appellant's interest was in securing statements from the father that would convince the District Attorney to minimize consequences for appellant. In this instance, the father testified that at the time he believed appellant to be innocent of the charges and that the proper punishment would be no punishment.

According to the father, counsel thought the father had an interest in not disclosing his opinion that appellant was innocent because that opinion might cause the father to lose custody of his children. The father testified that counsel advised him to keep silent about his opinion that appellant was innocent, lest appellant risk losing custody of his children. Counsel disputed this testimony. Even assuming the trial court discredited the father's testimony, counsel's account of this incident itself is sufficient to show that the actual conflict of interest colored counsel's actions.

Counsel testified that he told the father to tell the District Attorney's Office "whatever [father] wanted." This advice was not zealous representation of appellant, who was seeking a lesser sentence than the District Attorney's Office was proposing. The majority notes counsel testified that he did not know the father wanted to make a

supportive statement. But, counsel's unawareness of what the father would say condemns rather than excuses counsel's failure to act.

Counsel's testimony that he did not know what the father would say shows counsel chose to advise the father without undertaking to investigate what, if anything, the father could offer that might further appellant's goals of minimizing the consequences of potential conviction and punishment. Counsel's decision not to make inquiry and not to investigate prompts important questions:

> • Would an attorney not laboring under a conflict of interest fail to ask the father what he wanted to say?

> • Would an attorney zealously representing only appellant's interests squander the opportunity to attempt to secure a supportive statement on behalf of appellant?

At this critical point in counsel's representation of appellant, counsel chose not to inquire and not to investigate. Doing so would have furthered appellant's interests but compromised the father's interests. Counsel could not serve the interests of both clients. Counsel chose not to serve appellant's interests.

**\*11** By choosing to do nothing, counsel lost the opportunity to learn what the father would say and attempt to secure a statement from the father in support of appellant.[15] The conflict of interest affected counsel's actions—he failed to make inquiry and he failed to advocate on appellant's behalf while interacting with the father.[16]

### *Cuyler Standard Satisfied*

The undisputed evidence shows the conflicts of interest colored counsel's actions as well as his advice.[17] Accordingly, the *Cuyler* standard is satisfied.

### *Conclusion*

Counsel had actual conflicts of interest and that those conflicts colored his representation of appellant. Therefore, the court should sustain appellant's first issue and reverse and remand the case to the trial court for a new trial

**All Citations**

--- S.W.3d ----, 2015 WL 2405549

Footnotes

1       Appellant made clear in the trial court, and has repeated on appeal, that he is not asserting as the basis for his right to a new trial a broader claim of ineffective assistance of counsel based on grounds such as his trial counsel's failure to conduct an adequate investigation of his case. Appellant has affirmatively limited his claim of ineffective assistance of counsel to the three grounds mentioned in the text.

2       The visiting judge specifically admonished appellant that: "the full range of punishment in this matter is by life confinement in the Texas Department of Criminal Justice, or a term of years not less than five, no more than ninety-nine, with an optional fine in any amount not to exceed $10,000. That's the full range of punishment. In addition to that conviction, you will be required to register under the Texas Sex Offender Registration Act. You understand that?" Appellant responded that he did.

3       Appellant also asserts within his first argument that he is entitled to a new trial because the trial court failed to conduct a *Greig* hearing. *See U.S. v. Greig,* 967 F.2d 1018, 1022 (5th Cir.1992) (holding when actual conflict exists, trial court must hold hearing to ensure defendant (1) is aware of the conflict, (2) realizes the potential hazard to his defense as a result of using the conflicted attorney, and (3) knows his right to obtain other counsel). While the more commonly used name for this type of hearing is a *Garcia* hearing, we use the name suggested by appellant for purposes of this appeal. *See U.S. v. Garcia,* 517 F.2d 272, 277 (5th Cir.1975), *abrogated on other grounds by Flanagan v. U.S.,* 465 U.S. 259, 263 n.1, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). It is undisputed that the trial court did not conduct a *Greig* hearing. We conclude that this fact alone does not establish appellant is entitled to a new trial because appellant must still show he was adversely affected by the actual conflict. *See Greig,* 967 F.2d at 1024; *Ramirez v. State,* 13 S.W.3d 482, 487–90 (Tex.App.—Corpus Christi 2000, pet. dism'd).

4       In contending that a new trial is required in the interest of justice (an issue we address in Part III below), appellant points to record evidence that Rodriguez conducted no investigation into his case and advised him to accept the State's plea bargain offer even though Rodriguez had no information on the strength or weakness of the State's case against him. Our dissenting colleague relies on this argument to support her view that appellant was adversely impacted by his counsel's conflict of interest. We do not reach this specific argument, however, because appellant has affirmatively represented that he seeks a new trial only on the basis of an actual conflict of interest and has expressly disclaimed any attempt to establish a broader claim of ineffective assistance of counsel such as a failure to investigate.

5       As part of his argument that Rodriguez pressured him into pleading guilty, appellant briefly mentions an allegation that Rodriguez conducted no investigation before telling him that he would be convicted and sentenced to life in prison if he did not accept the State's plea bargain. Because appellant has affirmatively stated that he is not pursuing a broader ineffective assistance of counsel claim based on an allegation of failure to investigate, we do not construe this allegation as raising a separate claim that he should be granted a new trial in the interest of justice because his trial counsel failed to investigate his case, and we render no opinion on that issue.

1       *See Acosta v. State,* 233 S.W.3d 349, 352 (Tex.Crim.App.2007).

2       *See id.* at 352–53; *Ex parte McCormick,* 645 S.W.2d 801, 805 (Tex.Crim.App.1983) (holding, in habeas proceeding, that petitioner was entitled to new trial because counsel's conflict of interest adversely affected petitioner).

3       *Odelugo v. State,* 443 S.W.3d 131, 136 (Tex.Crim.App.2014) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

4       *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997). *See Lopez v. State,* 428 S.W.3d 271, 283 (Tex.App.—Houston [1st Dist.] 2014, pet. ref'd).

5       *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. 1708.

6       *Gonzales v. State,* 605 S.W.2d 278, 280–81 (Tex.Crim.App.1980); *Perillo v. Johnson,* 79 F.3d 441, 448 (5th Cir.1996).

7    *See Gonzales,* 605 S.W.2d at 280–81. If appellant establishes an actual conflict, prejudice is presumed. *Maya v. State,* 932 S.W.2d 633, 635 (Tex.App.—Houston [14th Dist.] 1996, no pet.); *Perillo,* 79 F.3d at 448.

8    *See Pina v. State,* 29 S.W.3d 315, 320 (Tex.App.—El Paso 2000, pet. ref'd) (holding that counsel's action were colored by conflict when attorney representing two brothers failed to call one brother to testify for fear that testimony might incriminate other brother).

9    In this written document, appellant sought to waive a potential conflict, not an actual conflict; the trial court declined to accept the waiver. Even if this waiver were an accepted waiver of an actual conflict, the waiver was not knowing, intelligent, or voluntary because the record shows that appellant was not aware of the actual conflict and did not realize the consequences of continuing with counsel's representation. *See Maya,* 932 S.W.2d at 636 (noting that absent an express, voluntary waiver, an actual conflict of interest that hinders the effectiveness of counsel will mandate a new trial).

10   The trial court, though expressly disapproving of the conflict waiver, did not stop counsel from continuing to represent appellant.

11   *See Ramirez v. State,* 13 S.W.3d 482, 486–87 (Tex.App.—Corpus Christi 2000, pet. dism'd).

12   *See id.* at 486 (holding that evidence counsel struggled to "serve two masters" shows that an accused's defense has been impaired).

13   The trial court explained it agreed with appellant's position "morally" and "ethically" and lamented the "light this puts our profession in," but, the trial judge concluded:
> I've been on the bench long enough, and as a prosecutor and defense lawyer long enough to know that sometimes people plead guilty to things that they didn't do because they believe it's in their best interest to do so because they [sic] rather take six years than fifty. And my understanding of the law is, as long as you do that knowingly and intelligently, that's what it's going to be.
> And so I don't know if he did it or not, never will; even if there was a trial, I wouldn't know. Okay. I would just know what the evidence was, what the proof was, but I would never know that answer.
> So, even in light of your very convincing argument, I have to deny the motion.

14   Even assuming that the majority is correct that appellant's failure to preserve error forecloses this court from considering appellant's argument that he received ineffective assistance of counsel because his counsel did not conduct an adequate investigation, under the *Cuyler* standard this court still must consider counsel's inaction to the extent the inaction was colored by counsel's conflict of interest. *See Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

15   *See Lopez v. State,* 358 S.W.3d 691, 694–95 (Tex.App.—San Antonio 2011).

16   *See Ex Parte Parham,* 611 S.W.2d 103, 105 (Tex.Crim.App.1981) (holding in habeas proceeding that an attorney's "divided loyalties" adversely affected his representation when he advised a client not to testify while his duty to another client was to secure the testimony).

17   *See id.*; *Ramirez,* 13 S.W.3d at 486; *Pina,* 29 S.W.3d at 320; *Maya,* 932 S.W.2d at 635.

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.