**Affirmed and Majority and Dissenting Opinions filed May 19, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00559-CR

### JUAN QUINTERO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1368190**

## M A J O R I T Y   O P I N I O N

Appellant Juan Quintero pled guilty to the offense of aggravated sexual assault of a child as part of a plea-bargain agreement with the State. *See* Tex. Penal Code Ann. § 22.021 (West 2011). The trial court found appellant guilty and, in accordance with the plea bargain, sentenced him to serve six years in prison. Appellant retained new counsel and filed a motion for new trial alleging that his trial counsel was ineffective. The trial court denied appellant's motion.

Appellant contends in a single issue on appeal that the trial court abused its discretion when it denied his motion for new trial. Appellant makes three separate arguments within his single issue. Appellant initially contends that his trial counsel was ineffective because he advised appellant to plead guilty when counsel had an actual conflict of interest. We reject this argument because at least one reasonable view of the record evidence supports an implied finding by the trial court that appellant suffered no adverse effect as a result of the actual conflict of interest.

Appellant next argues that his guilty plea was not voluntary due to counsel's ineffective assistance. We overrule appellant's second contention because the evidence introduced during the hearing on the motion for new trial supports an implied finding by the trial court that appellant knowingly, intelligently, and voluntarily agreed to accept the State's plea bargain and plead guilty.

Finally, appellant argues that the interest of justice entitles him to a new trial. We overrule this argument because the interest of justice is not an independent basis for a trial court to grant a criminal defendant a new trial, and the independent legal ground asserted in support of appellant's interest-of-justice argument is identical to one raised, and rejected, in his first two arguments. We therefore affirm the trial court's judgment.

## BACKGROUND

In 2012, appellant's niece made an outcry that appellant had sexually assaulted her in several ways. Appellant retained attorney Rigoberto Rodriguez as his trial counsel. Appellant was eventually indicted for the offense. At the first trial setting after his indictment, the State offered appellant a plea bargain of six years' confinement. Appellant accepted the plea bargain. After admonishing appellant regarding his decision to waive his rights, the trial court accepted his

plea, found him guilty of the charged offense, and sentenced him to the agreed six-year prison term.

Appellant then retained new counsel, who filed a motion for new trial. The motion asserted that appellant was entitled to a new trial for three reasons: (1) Rodriguez rendered ineffective assistance because he counseled appellant to accept the State's plea bargain when he had an actual conflict of interest; (2) appellant's guilty plea was involuntary because Rodriguez was ineffective; and (3) the interest of justice required that he be granted a new trial.[1] The trial court conducted a hearing on appellant's motion during which several witnesses testified, including appellant, appellant's brother, and Rodriguez.

## A.    Appellant's testimony during the new trial hearing

Appellant testified that his parents located Rodriguez and hired him on appellant's behalf. Appellant then testified that he did not know what, if any, work Rodriguez did on his case between the complainant's outcry and the charge being filed against him. Appellant testified he was aware that Rodriguez was also representing his brother Jose Luis Quintero—the father of the complainant in appellant's sexual assault case—in two unrelated criminal matters. Appellant acknowledged that he had signed a waiver of potential conflict of interest, but explained that he did so because Rodriguez had told him it was a formality for the judge. According to appellant, Rodriguez did not discuss what the potential conflict was and did not tell him that the trial court ultimately denied a motion Rodriguez filed seeking the court's approval of the conflict waiver.

---

[1] Appellant made clear in the trial court, and has repeated on appeal, that he is not asserting as the basis for his right to a new trial a broader claim of ineffective assistance of counsel based on grounds such as his trial counsel's failure to conduct an adequate investigation of his case. Appellant has affirmatively limited his claim of ineffective assistance of counsel to the three grounds mentioned in the text.

Appellant testified that at the time he accepted the plea bargain, he was unaware of the evidence the State possessed against him. He went on to testify that he is innocent of the sexual assault charge, but he pled guilty because Rodriguez told him that if he did not accept the State's offer, he would probably be convicted at trial and would receive a life sentence. Appellant testified that he asked Rodriguez for time to consider the State's offer, but Rodriguez told appellant he had to decide right away. Appellant went on to testify that he pled guilty because his only other choice seemed to be to lose at trial and get a life sentence. The record shows that the visiting judge who accepted appellant's plea explained the full punishment range during the plea hearing.[2]

## B.     Jose Luis's testimony

Jose Luis testified that he was very upset and angry when he first learned about his daughter's outcry accusing appellant of sexual assault. Jose Luis went on to admit that he was charged with cruelty to animals and family assault after appellant was charged with sexual assault. According to Jose Luis, his parents hired Rodriguez to defend him in those two cases. Jose Luis testified that Rodriguez informed him there could be a big conflict of interest if he represented both brothers, that he probably should not represent both, but that the brothers could sign a paper so it would not be a problem. According to Jose Luis, Rodriguez did not specify the nature of the conflict of interest.

Jose Luis testified he eventually told Rodriguez that he no longer believed his brother was guilty. Jose Luis also informed Rodriguez that the prosecutor's

---

[2] The visiting judge specifically admonished appellant that: "the full range of punishment in this matter is by life confinement in the Texas Department of Criminal Justice, or a term of years not less than five, no more than ninety-nine, with an optional fine in any amount not to exceed $10,000. That's the full range of punishment. In addition to that conviction, you will be required to register under the Texas Sex Offender Registration Act. You understand that?" Appellant responded that he did.

4

office had called him wanting to discuss appellant's case and his thoughts on the appropriate punishment for appellant. According to Jose Luis, Rodriguez told him that it was not in his best interest to tell the prosecutors he now believed appellant was innocent. Rodriguez explained that it might result in his children being taken away based on a belief that he was trying to protect his brother rather than his daughter. When asked specifically what Rodriguez had told him, Jose Luis testified that Rodriguez said: "do not talk to the DA's Office and tell them that you think he's innocent because you may lose your kids." Jose Luis testified that he called the prosecutor's office back and told them that he just wanted the "system" to take care of it.

## C. Veronica Pina's testimony

A sister of appellant and Jose Luis, Veronica Pina, also testified during the hearing. She explained that she was involved in the hiring of Rodriguez and discussed his representation of her brothers. She testified that Rodriguez did not go into detail about potential conflicts of interest when she talked to him. According to Pina, Rodriguez said that he could represent both brothers.

## D. Trial counsel's testimony

Trial counsel Rodriguez testified that appellant hired him in May 2012 for an "investigation" concerning the sexual assault outcry. From that point until appellant was formally charged in November 2012, Rodriguez testified that he did nothing more than "be on call" in case the police wanted to talk to appellant. Rodriguez admitted that he did not talk to any witnesses and did not know the specifics of the outcry.

When appellant was charged in November 2012, Rodriguez applied the prior fee paid (for investigation) to a new legal services contract. He testified that after

5

this occurred, he agreed to represent Jose Luis in his criminal cases. Rodriguez testified that he explained the potential for a conflict of interest to the family and said that the brothers had to sign a waiver of the potential conflict before he would represent both. Rodriguez testified that he explained the potential conflict to both brothers. Rodriguez went on to explain that he would never have tried both cases; if necessary, he would have tried appellant's case and then withdrawn before Jose Luis's cases went to trial. Rodriguez testified that it was his choice whether to take them to trial.

Rodriguez explained that he filed a motion to waive potential conflict of interest. The trial court's staff called him later that day and told him the judge had denied the motion. Rodriguez testified that he approached the trial judge the next day and the judge told him that the motion was denied, but Rodriguez could still represent both appellant and his brother if he wished. Rodriguez went on to testify that he did not know whether an actual conflict of interest existed.

Rodriguez was also asked about his interactions with Jose Luis regarding appellant's case. Rodriguez denied that Jose Luis ever told him that he now believed appellant was innocent. Rodriguez admitted during his testimony that Jose Luis had contacted him concerning the prosecutor's attempt to discuss appellant's case, but Rodriguez asserted that he told Jose Luis to "tell [the prosecutor] whatever you want to tell [him]." Rodriguez also denied advising Jose Luis not to inform the prosecutor about his belief that appellant was innocent because doing so might endanger Jose Luis's access to his children.

Regarding appellant's guilty plea, Rodriguez testified that he showed up in court on June 4, 2013, and the prosecutor on appellant's case told him he was about to be replaced by a new prosecutor yet to be identified. According to Rodriguez, the departing prosecutor told him that the new prosecutor could decide

6

to file two more charges against appellant and then ask the trial court to stack the sentences. Rodriguez testified that during his discussions with appellant regarding the State's plea-bargain offer, he told appellant that a jury might acquit him, might find him guilty and sentence him to five years in prison, or might sentence him to life in prison. Rodriguez also testified that he informed appellant about his conversation with the departing prosecutor. Rodriguez testified that he told appellant exactly what the prosecutor had told him regarding the possibility of more charges and the stacking of any resulting prison terms. Rodriguez also testified he told appellant that if the State brought witnesses who could testify as to each of the indictment's allegations, then the State would have a strong case against him. Rodriguez then conceded that, at the time of the plea deal, he had no idea whether the State's case against appellant was actually strong or weak. Ultimately, Rodriguez testified that appellant wanted a deal with probation but decided to take the offered plea bargain because the State was not willing to offer probation. Rodriguez also emphasized repeatedly that appellant was not willing to go to trial.

### E. The trial court's denial of appellant's motion for new trial

At the end of the hearing, appellant's new counsel argued that it was unethical for Rodriguez to have represented Jose Luis at the same time that he represented appellant because Jose Luis could have been called as a witness against appellant. He went on to ask the trial court to grant appellant a new trial.

The trial court explained that he believed it unethical for a court to approve a conflict of interest, but that he lacked the authority to remove a lawyer from a case based on a conflict of interest. The court went on to find that a conflict existed in this case. The court stated that he agreed with appellant's arguments both "morally and ethically." Nevertheless, the court denied appellant's motion in its entirety,

7

stating: "sometimes people plead guilty to things that they didn't do because they believe it's in their best interest to do so because they [would] rather take six years than fifty. And my understanding of the law is, as long as you do that knowingly and intelligently, that's what it's going to be." This appeal followed.

## ANALYSIS

Appellant contends that the trial court abused its discretion when it denied his motion for new trial. Within that single issue, appellant makes three separate arguments, which we address in turn.

I. **Appellant has not shown that the trial court abused its discretion by refusing to grant him a new trial based on counsel's alleged conflict of interest.**

Appellant's first argument is that the trial court abused its discretion when it denied his motion for new trial because he was denied effective assistance of counsel due to his trial counsel's actual conflict of interest.

### A. Standard of review and applicable law

We review a trial court's decision on a motion for new trial for an abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). Under this standard, an appellate court should reverse the trial court's ruling only if it was clearly erroneous and arbitrary, such as when no reasonable view of the record could support the decision under review. *Odelugo v. State*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014). In the absence of express factual findings, we assume that the trial court made implicit findings of fact that support its ruling. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005). The record on appeal must be inspected from every reasonable vantage in the light most favorable to the trial court's ruling, and found to be deficient, before it may be overturned as an abuse of the trial court's discretion. *Odelugo*, 443 S.W.3d at 138. If one

8

reasonable view of the record would support the trial court's denial of a motion for new trial, the decision must be affirmed on appeal. *See id.*

The Constitution guarantees a criminal defendant effective assistance of counsel. *Ex parte Moore,* 395 S.W.3d 152, 157 (Tex. Crim. App. 2013). To prevail on his conflict-of-interest ineffectiveness claim, appellant must prove by a preponderance of the evidence that (1) his trial counsel had an actual conflict of interest, and (2) the conflict actually colored his trial counsel's actions during his representation of appellant. *Odelugo*, 443 S.W.3d at 136. "An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Monreal v. State,* 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). In other words, appellant must show that his trial counsel actually acted on behalf of those other interests, and he was adversely impacted as a result. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Appellant's claim will fail if (1) no evidence has been presented on the issue, or (2) the evidence relevant to the issue is in perfect equipoise. *Odelugo*, 443 S.W.3d at 136–37.

**B.     Appellant did not prove by a preponderance of the evidence that he was adversely impacted by any conflict of interest.**

Even if we assume the existence of an actual conflict of interest, appellant must still establish, by a preponderance of the evidence, that he was adversely impacted by his trial counsel's conflict of interest. Appellant contends he met this burden through: (1) undisputed evidence that Rodriguez represented his brother—the father of the complainant, and therefore a potential material witness against him—while continuing to represent appellant; (2) his brother's testimony that Rodriguez advised him to not tell the prosecutors his belief that appellant had not sexually assaulted his daughter; and (3) his own testimony that Rodriguez

9

pressured him into accepting the State's plea-bargain offer by telling him he would be convicted if he went to trial and would then receive a life sentence. We disagree that, under the appropriate standard of review, appellant has established that the trial court abused its discretion when it denied his motion for new trial based on an actual conflict of interest.

Appellant's first argument consists simply of evidence that the dual representation created an actual conflict of interest. That evidence does not address the second part of the test: whether trial counsel acted on behalf of other interests to appellant's detriment. Our dissenting colleague argues that such an adverse impact has been shown because Rodriguez failed to "disclose to appellant the trial court's conclusion that the dual representation was unethical" and the court's advice that Rodriguez "discontinue the dual representation"—information that would have allowed appellant to make an informed decision about waiver and choice of counsel. *Post*, at 5–6. But there is no evidence that the trial court disclosed any such conclusion or advice to Rodriguez before appellant entered his guilty plea. Rather, the trial court simply denied counsel's motion seeking approval of the waiver appellant had signed, and Rodriguez testified that the trial court said he could still represent both appellant and Jose Luis if he wished.[3]

Appellant's second and third arguments likewise do not demonstrate an

---

[3] Appellant also asserts within his first argument that he is entitled to a new trial because the trial court failed to conduct a *Greig* hearing. *See U.S. v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992) (holding when actual conflict exists, trial court must hold hearing to ensure defendant (1) is aware of the conflict, (2) realizes the potential hazard to his defense as a result of using the conflicted attorney, and (3) knows his right to obtain other counsel). While the more commonly used name for this type of hearing is a *Garcia* hearing, we use the name suggested by appellant for purposes of this appeal. *See U.S. v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. U.S.*, 465 U.S. 259, 263 n.1 (1984). It is undisputed that the trial court did not conduct a *Greig* hearing. We conclude that this fact alone does not establish appellant is entitled to a new trial because appellant must still show he was adversely affected by the actual conflict. *See Greig*, 967 F.2d at 1024; *Ramirez v. State*, 13 S.W.3d 482, 487–90 (Tex. App.—Corpus Christi 2000, pet. dism'd).

adverse effect because they ignore that the evidence regarding Rodriguez's dealings with both Jose Luis and appellant was disputed. Although the brothers each offered testimony that, if believed, could establish an adverse impact on appellant, Rodriguez offered directly contrary testimony. For example, Rodriguez testified that Jose Luis never told him that he now believed appellant was innocent. Although he agreed that Jose Luis had approached him about what to tell the prosecutors regarding appellant's case, he denied advising Jose Luis to remain quiet about his changed attitude toward his brother in order to advance Jose Luis's own interests. Rodriguez testified that he instead advised Jose Luis to "tell [the prosecutor] whatever you want to tell [him]." Our dissenting colleague faults Rodriguez for not attempting to secure a statement from Jose Luis in support of appellant. *Post*, at 8. But according to Rodriguez, he did not know that Jose Luis was now willing to make a supportive statement. This testimony undercuts the dissent's theory that Rodriguez gave this advice to advance Jose Luis's interests to the detriment of appellant.[4]

The trial court, as the trier of fact, was entitled to believe Rodriguez's testimony and disbelieve the testimony of both appellant and his brother. *See Odelugo*, 443 S.W.3d at 138 (stating that trial court can choose to disbelieve even uncontroverted testimony if its probative value depends on the credibility of the witness). We conclude the trial judge implicitly did so here. *See Johnson*, 169 S.W.3d at 239. Given the trial court's implicit rejection of the brothers' testimony

---

[4] In contending that a new trial is required in the interest of justice (an issue we address in Part III below), appellant points to record evidence that Rodriguez conducted no investigation into his case and advised him to accept the State's plea bargain offer even though Rodriguez had no information on the strength or weakness of the State's case against him. Our dissenting colleague relies on this argument to support her view that appellant was adversely impacted by his counsel's conflict of interest. We do not reach this specific argument, however, because appellant has affirmatively represented that he seeks a new trial only on the basis of an actual conflict of interest and has expressly disclaimed any attempt to establish a broader claim of ineffective assistance of counsel such as a failure to investigate.

and acceptance of Rodriguez's, it was within the court's discretion to conclude that appellant failed to show by a preponderance of the evidence that he was adversely affected by his trial counsel's conflict of interest. *Odelugo*, 443 S.W.3d at 138. Therefore, we hold the trial court did not abuse its discretion when it denied appellant's motion for new trial based on an actual conflict of interest. *Id.*

**II.     Appellant has not shown that the trial court abused its discretion by refusing to grant him a new trial on the ground that his guilty plea was not knowingly, intelligently, and voluntarily entered.**

In his second argument, appellant claims that the trial court erred when it denied his motion for new trial based on the allegedly involuntary nature of his guilty plea. According to appellant, his plea was involuntary because his attorney rendered ineffective assistance by failing to advise him of the existence of an actual conflict of interest and by pressuring him to take the plea when he told him he faced two choices: pleading guilty with a six-year sentence, or going to trial and being found guilty and sentenced to life in prison. In this argument, appellant makes no reference to the visiting judge's admonishments regarding his decision to plead guilty to the aggravated sexual assault charge. He also does not contend that the admonishments, which are contained in the record, are insufficient.

Due process required that a guilty plea be entered knowingly, intelligently, and voluntarily. *Kniatt v.State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In considering the voluntariness of a guilty plea, an appellate court examines the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). Evidence that a defendant was admonished by the trial court creates a prima facie showing that the guilty plea was made voluntarily and knowingly. *Id.* The burden then shifts to the defendant to show that he entered the plea without understanding the consequences of his action. *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The record demonstrates that appellant received written admonishments from the visiting judge. Appellant signed those admonishments and initialed several paragraphs specifically acknowledging that he understood the charges against him and the consequences of a guilty plea, and that he had fully consulted with his attorney before signing the admonishments and agreeing to the plea. The record also demonstrates that the visiting judge orally admonished appellant regarding his decision to plead guilty. Therefore, there is a prima facie showing that appellant entered his guilty plea knowingly, intelligently, and voluntarily, and appellant had the burden to show the trial court that his plea was nevertheless involuntary. *See Martinez*, 981 S.W.2d at 197.

Attempting to meet this burden, appellant relies on his testimony that his attorney had not advised him of the existence of an actual conflict of interest before he agreed to plead guilty and had pressured him to take the plea. But there is other evidence in the record that appellant was aware of the conflict. In addition, we have already determined that the trial court could have disbelieved appellant's testimony regarding his trial counsel's handling of the plea bargain and instead believed Rodriguez's testimony that he discussed the State's plea-bargain offer with appellant and that he explained appellant's options prior to appellant's decision to accept the plea. We therefore conclude appellant has not met his burden to demonstrate that his guilty plea was involuntary and, as a result, has not shown that the trial court abused its discretion when it denied his motion for new trial based on this ground.

III. **Appellant has not shown that the trial court abused its discretion by refusing to grant him a new trial in the interest of justice.**

In his final argument on appeal, appellant contends the trial court abused its discretion when it refused to grant him a new trial in the interest of justice. The

interest of justice is not an independent basis for granting a new trial, however. *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014). The Court of Criminal Appeals has held that there must be some legal basis underpinning the grant of a new trial, even when it is sought in the interest of justice. *Id.* As a general rule, a trial court does not abuse its discretion in granting a motion for new trial in the interest of justice if the defendant (1) articulated a valid legal claim in his motion, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the rules of appellate procedure. *State v. Sanders*, 440 S.W.3d 94, 99 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

In an effort to meet these requirements, appellant asserts that the trial court should have granted his motion in the interest of justice for one of the reasons he asserted previously: his trial counsel was ineffective because he pressured him into pleading guilty.[5] We have already addressed, and rejected, this contention as a stand-alone basis for the trial court to grant appellant a new trial. Having done so, we hold this contention also cannot serve as the legal basis underlying the grant of a new trial in the interest of justice. *See id.* at 104 (concluding that one ground did not support new trial because court had already analyzed essentially the same argument under another ground and concluded it did not support new trial). We therefore hold that the trial court did not abuse its discretion when it denied appellant's motion for new trial based on this ground.

---

[5] As part of his argument that Rodriguez pressured him into pleading guilty, appellant briefly mentions an allegation that Rodriguez conducted no investigation before telling him that he would be convicted and sentenced to life in prison if he did not accept the State's plea bargain. Because appellant has affirmatively stated that he is not pursuing a broader ineffective assistance of counsel claim based on an allegation of failure to investigate, we do not construe this allegation as raising a separate claim that he should be granted a new trial in the interest of justice because his trial counsel failed to investigate his case, and we render no opinion on that issue.

## CONCLUSION

Having addressed each argument raised in appellant's single issue on appeal and concluded that none supports reversal, we overrule that issue and affirm the trial court's judgment.

/s/    J. Brett Busby
            Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby (Frost, C.J., dissenting).
Publish — TEX. R. APP. P. 47.2(b).