# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
NO. 03-18-00196-CR
---

The State of Texas, Appellant

v.

David Delacruz, Appellee

---
FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY,
NO. C-1-CR-12-209490, THE HONORABLE JOHN LIPSCOMBE, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

David Delacruz was convicted by a jury of driving while intoxicated, *see* Tex. Penal Code § 49.04(a), and the trial court assessed his punishment at confinement for 90 days in the county jail, *see id.* § 12.22. Subsequently, the trial court granted Delacruz's post-trial motion to set aside the verdict and granted Delacruz a new trial. The State appeals, contending that the trial court abused its discretion in granting a new trial. For the reasons set out below, we reverse the trial court's order granting a new trial.

## BACKGROUND

On July 6, 2012, Delacruz was charged by information with the offense of driving while intoxicated, a Class B misdemeanor. *See id.* § 49.04(a). The information further alleged that, at the time of the offense, Delacruz had an alcohol concentration of greater than 0.15, which elevated the offense to a Class A misdemeanor. *See id.* § 49.04(d). A jury was selected and empaneled to

hear the case on Tuesday, February 27, 2018.[1]  During trial, the State called, among other witnesses,

a technical supervisor from the breath-alcohol testing program at the Texas Department of Public

Safety.  During his testimony on Thursday, March 1, 2018, the third day of trial, the State offered

the test slip of the breath test conducted on Delacruz.  The following exchange ensued:

PROSECUTOR:     Your Honor, at this time the State would ask to admit State's
                Exhibit 11.

THE COURT:      Any objection?

COUNSEL:        In addition to previously stated objections, I would also object
                that there's a failure to lay a predicate, that I believe the
                statute would require the presence of the technical supervisor
                as well as the 6th Amendment confrontation to the actual
                technical supervisor, so --[2]

---

[1]  The record reflects that during the pendency of this prosecution, Delacruz failed to appear
for court.  He was arrested on the outstanding capias warrant on November 20, 2017.

[2]  As far as we can discern, the "previously stated objections" are as follows:

•    Objections raised during the patrol officer's testimony about the traffic stop.  Defense
     counsel asserted a "conditional" "4th amendment objection" to "anything that goes
     from the point after he's stopped, that that was in violation of his 4th Amendment
     rights."

•    Objections to the dash-cam video recording of the traffic stop.  Defense counsel first
     asserted "all constitutional objections, 4th, 5th" subject to the court's review of the
     video recording of the traffic stop during trial.  Then, counsel stated that "in addition
     to [his] constitutional objection under the 4th and 5th amendment, [he] would also
     make an objection under 702, 703, 704, and 802."  He indicated that he was objecting
     to the evidence of the field sobriety tests administered to Delacruz on the recording.
     He maintained that "[n]o evidence should come before the jury about these field
     sobriety tests" but expressed that he was fine having the court review that video
     evidence during the trial rather than previewing it separately, indicating that the court
     could "just give [him] a ruling one way or the other" after viewing the video with the
     jury and that he would "be fine with a limiting instruction" after the fact and would
     not ask for a mistrial.  Counsel concluded his objection to the video recording by

2

THE COURT:        We've gone over those before.

COUNSEL:          Right.  So the same objections --

THE COURT:        I'll allow your running objection on that.

COUNSEL:          Thank you.  Appreciate it.

THE COURT:        That's overruled.

PROSECUTOR:       And may the State publish to the jury?

THE COURT:        Yes, you may.

---

expressing that he "wanted it conditionally admitted pursuant to my running objections . . . under 702."

The video recording was played for the jury, and the prosecutor asked the patrol officer a few follow-up questions.  Defense counsel did not, after the court's review of the video as it was played for the jury, seek any ruling from the court, and the trial court did not make any rulings.  Nor did counsel ask for any limiting instruction from the court.  Instead, counsel simply proceeded with his cross examination of the patrol officer.

•       Objections to the transcript of the video recording (which translated the conversation on the recording from Spanish to English) in which defense counsel asserted the "same running objection."

•       Objections raised when the State offered photographs of the intoxilyzer instrument. Defense counsel asserted "the same constitutional objection to all evidence obtained."

•       Objections to State's Exhibit #7, a redacted version of the test slip of Delacruz's breath test, in which defense counsel raised the "same objections" and objected "to the predicate as well."

•       Objections to State's Exhibit #8, a test record containing data generated by the intoxilyzer instrument indicating that the instrument was operating correctly, in which defense counsel objected to the exhibit on confrontation grounds.

3

After the exhibit was displayed to the jury, the trial continued with testimony from the technical supervisor. The proceedings were recessed for the day after the trial court excluded testimony from a State's witness (a clerk from the county clerk's office) who was going to testify about Delacruz's failure to appear in order for the State to explain the six-year delay in the prosecution.[3]

The following morning, on Friday, March 2, 2018, the court released the jury (to return on Monday) in order to take up a witness-availability issue. The prosecutor informed the court that she had learned Thursday afternoon, at approximately 5:00 p.m., that the intoxilyzer operator (IO) who conducted the breath test on Delacruz was unavailable to testify because "he was not physically in the area." The prosecutor revealed that she had not personally communicated with the witness before trial but had instead utilized the standard procedure of relying on representations by the APD court liaison concerning the availability of APD witnesses. In discussing the earlier admission of Delacruz's breath test results, the following exchange occurred:

| | |
|---|---|
| THE COURT: | The -- the exhibit in question has only been conditionally entered. It's not finally entered as we all know. Do you agree with that? |
| PROSECUTOR: | I would ask to see the record just to make sure because I don't know that I remember that correctly. |
| THE COURT: | No, it's not finally entered as an exhibit. |
| PROSECUTOR: | Okay. |

---

[3] The trial court concluded that "the addition of this evidence would be overly prejudicial" to the defense because of the evidence of the breath test and the video recording, which the trial court indicated "does not look all that great for the defendant."

THE COURT:        That was made clear all along.[4]

                  I'm not happy.  I am going to take the Defense's motion for
                  speedy trial and I'm going to hold my ruling in abeyance till
                  Monday.

PROSECUTOR:       Yes, sir.

The trial judge then adjourned the proceedings until Monday.

On Monday, March 5, 2018, the court conducted a hearing outside the presence of the jury.  The trial judge explained the purpose for the hearing as follows:

It's my understanding that the State was going to put on evidence out of order last week and so we heard from the technical supervisor.  The Defense had a timely objection to run that conditionally so that the IO could testify after -- or out of turn afterward, after the supervisor testified.  That did not happen as of Friday, so we're going to find out today why that happened[.][5]

The State then called the APD court liaison and the intoxilyzer operator.

The court liaison testified that as per the standard procedure with this intoxilyzer operator, she accepted the subpoena for the IO on his behalf and notified him of the subpoena by

---

[4] We note that the excerpt from the record recited above of the admission of State's Exhibit #11, the test slip of Delacruz's breath test results, does not indicate that the exhibit was conditionally admitted.

[5] Again, we observe that, while that may have been the trial judge's understanding, perhaps based on conversations off the record, the record of the admission of the breath test results does not reflect that the exhibit was conditionally admitted subject to later witness testimony.  Nor does the record show that Delacruz requested that the exhibit be conditionally admitted subject to the IO's later testimony.

5

email.[6] The week before trial, the liaison communicated to the prosecutors that the IO was available to testify as a witness. At the hearing, the liaison explained that she had difficulty contacting the IO about testifying in this case. She was unable to reach him by phone, so she reached out to her chain of command.[7] These efforts were ongoing during the trial as the prosecutors were asking the liaison to confirm a time for the IO to come testify. Ultimately, the intoxilyzer operator's supervisor notified the liaison that the IO was not available to testify because he was out of the country. She then communicated that information to the prosecutors.

The intoxilyzer operator confirmed the procedure that the liaison described. He said that he receives an email about a "possible" court setting and he "sometimes" lists them on his calendar. He explained that he receives approximately 100 email notifications about subpoenas every month ("give or take") but his appearance during this trial was only the fifth time in the past seven years that he has testified. For that reason, he clarified, he does not calendar all the notifications that he receives; there are simply too many. The IO testified that he was unaware that the APD court liaison had accepted a subpoena on his behalf for this trial. He also revealed that,

---

[6] The record reflects that the intoxilyzer operator retired from APD in 2007 and that he worked as an IO part time for APD on a contract basis (only on Saturday nights). As such, he did not have access to the police computer system in which subpoenas for APD witnesses are entered. According to the APD court liaison, employees who have access to the system "decline" if they are unavailable and then provide the reason for unavailability to the liaison. The liaison testified that this IO's situation was "unique" because he did not have access to the computer system. Under the routine procedure established for him, she would notify him of the subpoena by email, and he would notify her if he was not available.

[7] The record reflects that only on Wednesday, February 28, 2018, the second day of trial, did the liaison first inform the State that she had not spoken directly to the intoxilyzer operator. Previously, she communicated to the prosecutor that she had left a voicemail for the IO to appear in court to testify at 1:00 p.m. on Wednesday, February 28th.

although he had notified his superiors about his vacation (and, thus, his unavailability for court proceedings), he did not contact the APD court liaison.

At the conclusion of the hearing, the trial judge noted the "problem with the process."[8] The judge asserted that the breath test "was received conditionally over proper objection" based on "the fact that the proper predicate had not been laid in [sic] because the IO did not testify" and based upon the Sixth Amendment Confrontation Clause. The trial judge then excluded the intoxilyzer operator as a witness and informed the parties that he would instruct the jury to disregard the evidence relating to the breath test. At that point, Delacruz moved for a mistrial based on the State's "misstatement of the facts" concerning the IO's availability. The trial court denied the motion.

The court then resumed the trial, instructing the jury to disregard the testimony relating to the breath test and the associated exhibits. After the instruction, Delacruz again moved for a mistrial in front of the jury, which was again denied. The court then released the jury for lunch and Delacruz re-urged his motion for mistrial. He argued that the State had made a "conscious decision" to tell the court that the intoxilyzer operator would be testifying when the prosecutor knew he was not available to testify. He complained that the State was "absolutely profiting off of this misconduct." The trial judge rejected Delacruz's contention, concluding that "[t]here's no

---

[8] Specifically, the court lamented,

How you can have a system where you notify an officer of a court date or a witness of a court date and then for some reason that witness thinks it's okay not to respond back and tell the liaison person that they can't be there, that's just -- to me, it's untenable and it's -- it's unprofessional a lot of other uns and that needs to be fixed.

7

misconduct." He explained that he "[didn't] think that there was any bad behavior on the State's side" but rather "some bad behavior on the witness's side." The judge stated that he "[didn't] find an intentional misrepresentation" and ruled that there was "no illegality" on the part of the prosecution.

After the lunch break, Delacruz moved for a directed verdict, which the trial court denied. The trial continued with the testimony of Delacruz's wife. The defense presented no further witnesses, and both sides closed. Following jury argument, the case was submitted to the jury. The court submitted only the offense of Class B misdemeanor driving while intoxicated; it did not charge the jury on the elevating circumstance of having an alcohol concentration of greater than 0.15. The jury found Delacruz guilty. After the jury returned its verdict, Delacruz withdrew his election to have the jury assess punishment, and the parties agreed to have the trial court assess punishment. The jury was excused. The trial court then found Delacruz guilty of driving while intoxicated and sentenced him to serve 90 days in the county jail.

Four days after the trial, on Friday, March 9, 2018, the trial court convened a post-trial hearing during which Delacruz indicated his intent to request that the trial court set aside the verdict of guilty. He told the court that this planned request to set aside the verdict was "distinct from a motion for new trial" and asked the court

> to arrest any further proceedings on this case until it has had an opportunity to take evidence and conduct a full inquiry as to whether or not this Court very well may reconsider [counsel's] motion for mistrial, [counsel's] motion for a directed verdict, and further motions that would be allowable by law.

8

The trial judge indicated that he had already signed the judgment of conviction and expressed that he did not have a written motion to act on. He agreed to reconvene in the afternoon if such a motion was filed. The judge explained that "the two opportunities" for Delacruz at that point were "to either file a motion for new trial or to file notice for appeal." That afternoon, Delacruz filed a motion entitled *Motion to Set Aside Verdict of Guilty, Declare Mistrial with Prejudice Against the State and Motion for Any Other Discovery Necessary to Prevail on the Merits of This Motion*.

The court conducted a hearing on the motion that same afternoon, immediately after it was filed. Two witnesses testified at the hearing: the court reporter who recorded Delacruz's DWI trial and the lead trial prosecutor. The court reporter testified about a conversation that she had with the trial prosecutor at the beginning of trial concerning the number of witnesses the State would have. The prosecutor testified about her understanding of the intoxilyzer operator's availability for trial, the efforts made to contact him during trial, and her discovery that the IO was out of the country and unavailable. At the conclusion of the hearing, the trial judge again rejected Delacruz's contention that the prosecutor had intentionally misled the court about the IO's availability but granted Delacruz's request for a mistrial. Subsequently, after the State's second request for a written order memorializing the court's ruling, the trial court entered an order, entitled *Order Partially Granting the Defense Motion to Set Aside the Verdict and Grant[ing] a Mistrial*, that granted Delacruz a new trial. The State now appeals the trial court's order granting a new trial. *See* Tex. Code Crim. Proc. art. 44.01(a)(3) (providing that State may appeal order granting new trial).

9

## DISCUSSION

At the post-trial hearing, the trial court stated that it was "declaring a mistrial in this case without prejudice." However, "[a] mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)); *accord Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *see Mistrial*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "mistrial" as "[a] trial that the judge brings to an end without a determination on the merits because of a procedural error or serious misconduct occurring during the proceedings"). Here, the trial had concluded four days before the trial court's ruling. In fact, the record reflects that Delacruz's motion was filed after the trial court had signed the judgment of conviction memorializing the jury's guilty verdict and the trial court's jail sentence. Because the trial had concluded with a determination of the merits, there were no "trial proceedings" to halt; no mistrial was possible at that time.

However, while the written order subsequently entered by the trial court stated that "the Court grants a mistrial, but without the prejudice that the defense has requested," the order indicated that "[t]he legal effect of the Court's order is that of granting a new trial in a criminal cause." "If a trial court's order is functionally indistinguishable from the granting of a motion for new trial, a reviewing court can look past the label given to it and treat it as an order granting the motion for new trial." *State v. Davis*, 349 S.W.3d 535, 538 (Tex. Crim. App. 2011); *see, e.g.*, *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996) (treating order granting motion for judgment *non obstante verdicto* as functional equivalent of order granting motion for new trial for

10

insufficient evidence because it accomplished same outcome); *State v. Evans*, 843 S.W.2d 576, 577 (Tex. Crim. App. 1992) (determining that order granting motion to withdraw or reconsider plea should have been called order granting new trial because it returned case to posture before plea was accepted); *cf. Davis*, 349 S.W.3d at 538 (concluding that order granting motion for reconsideration or reduction of sentence, which reduced and reformed defendant's sentence, was functionally indistinguishable from granting of new trial on punishment). The court's order granting a "mistrial" with the "legal effect" of "granting a new trial" was the functional equivalent of an order granting a motion for new trial.[9] Accordingly, we review the trial court's order here as an order granting a motion for new trial.

A motion for new trial is a prerequisite for the trial court to grant a new trial; the court may not do so on its own motion. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013); *State v. Aguilera*, 165 S.W.3d 695, 699 (Tex. Crim. App. 2005). For that reason, we construe Delacruz's post-trial motion to set aside the verdict as a motion for new trial. The Court of Criminal Appeals has repeatedly held that "[a]n essential element of [a motion for new trial] is that the matter of error relied upon for a new trial must be specifically set forth therein." *Zalman*, 400 S.W.3d at 593–94 (quoting *Harvey v. State*, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947)); *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993). The defendant is required to allege in the motion sufficient grounds to apprise the trial court and the State of why he believes he is entitled to a new

---

[9] Similarly, the trial court's oral ruling granting a mistrial "without prejudice" was the functional equivalent of an oral ruling granting a new trial. *Cf. State v. Davis*, 349 S.W.3d 535, 538 (Tex. Crim. App. 2011) ("If a trial court's order is functionally indistinguishable from the granting of a motion for new trial, a reviewing court can look past the label given to it and treat it as an order granting the motion for new trial.").

trial. *Zalman*, 400 S.W.3d at 594; *see Gonzalez*, 855 S.W.2d at 694–95 ("accused is required to allege sufficient grounds [in new-trial motion] to apprise the trial judge and the State as to why he believes himself entitled to a new trial").

In this case, the legal claim articulated in Delacruz's post-trial motion was prosecutorial misconduct. Delacruz asserted that the prosecutor intentionally lied to the court about the availability of the intoxilyzer operator. The record from the hearing reflects that, while the trial judge agreed that there was "sloppy preparation in this case," the judge did not agree that there was any "malfeasance" by the prosecutor.[10] Moreover, the trial judge explicitly disputed—based on the evidence Delacruz presented to the court—the claim of prosecutorial misconduct:

> COUNSEL: And I'm saying, Judge, we've got to stop just taking them at face value and look at all the facts, and the facts are she made a conscious choice to mislead you.
>
> THE COURT: I don't agree with that.
>
> COUNSEL: I know you don't want to believe that.
>
> THE COURT: [Counsel], I don't agree with that.
>
> COUNSEL: But it's --
>
> THE COURT: *It's not true and the evidence doesn't reflect that.* There is a difference between being sloppy and a difference between being conniving, and I don't see there's any conniving here.

---

[10] The trial judge stated twice that he did not find malfeasance on the part of the State. He first said that "the question is whether or not that rises to malfeasance; I don't see that at this time." He later stated, "You know, I don't see here where there's any malfeasance."

12

(Emphasis added.) The trial judge explained that he "[thought] that [the prosecutor] had a good-faith basis [to believe that the intoxilyzer operator was available to testify] because he accepted his subpoena." At the conclusion of the hearing, the trial judge stated that he believed that he had taken the appropriate action during trial:

> The remedy I thought at that time was to suppress the evidence and I still think that, but it sound[s] like you want to have a mistrial and so I'm going to declare a mistrial in this case without prejudice. It is so ordered.

Thus, notwithstanding his rejection of Delacruz's legal claim, the trial judge granted a new trial.[11]

A trial court's decision to grant a motion for new trial is reviewed only for an abuse of discretion. *State v. Arizmendi*, 519 S.W.3d 143, 148 (Tex. Crim. App. 2017); *Zalman*, 400 S.W.3d at 593; *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). That discretion, however, is not unbounded or unfettered. *Arizmendi*, 519 S.W.3d at 148; *Zalman*, 400 S.W.3d at 593. A judge may not grant a new trial on mere sympathy, an inarticulate hunch, or simply because he believes the defendant received a raw deal or is innocent. *Zalman*, 400 S.W.3d at 593; *Herndon*, 215 S.W.3d at 907; *see Arizmendi*, 519 S.W.3d at 148.

Further, while a judge may grant a motion for new trial "in the interest of justice," "'justice' means in accordance with the law." *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014); *Zalman*, 400 S.W.3d at 593; *Herndon*, 215 S.W.3d at 907. "In the interest of justice" is not an independent basis for granting a criminal defendant a new trial. *Thomas*, 428 S.W.3d

---

[11] As we noted previously, the trial court's oral ruling was the functional equivalent of an oral ruling granting a new trial. *Cf. Davis*, 349 S.W.3d at 538.

at 105; *Riordan v. State*, No. 03-16-00297-CR, 2017 WL 3378889, at \*9 (Tex. App.—Austin Aug. 4, 2017, no pet.) (mem. op., not designated for publication); *Easter v. State*, No. 01-14-00450-CR, 2016 WL 6648812, at \*13 (Tex. App.—Houston [1st Dist.] Nov. 10, 2016, no pet.) (mem. op., not designated for publication); *Quintero v. State*, 467 S.W.3d 671, 679–80 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see Arizmendi*, 519 S.W.3d at 161 (Newell, J., concurring) (observing that "'interest of justice' is not a legal claim unto itself"). "There must be some legal basis underpinning the grant of a new trial, even if it is granted in the interest of justice." *Thomas*, 428 S.W.3d at 105.

Here, the only legal basis asserted in Delacruz's motion was prosecutorial misconduct. The record demonstrates that the trial court explicitly rejected that claim. Nevertheless, notwithstanding the fact that the court rejected the sole legal basis Delacruz asserted as grounds for a new trial, the court granted a new trial.[12]

---

[12] Delacruz states in his reply brief that "There is no requirement that the court's granting of Appellee's motion for mistrial be granted for the reasons argued in his motion for mistrial." However, the order here is "functionally indistinguishable" from an order granting a motion for new trial. Thus, its precipitating motion was the functional equivalent of a motion for new trial, given that such a motion is a prerequisite to granting a new trial. Accordingly, we review the order and motion under the law governing motions for new trial. Delacruz's statement that the trial court can grant a new trial for reasons not raised in the motion is contrary to that law.

"The trial court has no authority to grant a motion for new trial based on a ground not raised in the motion." *Gonzalez v. State*, No. 13-16-00361-CR, 2018 WL 3655566, at \*2 (Tex. App.—Corpus Christi Aug. 2, 2018, no pet.) (mem. op., not designated for publication); *see, e.g.*, *State v. Provost*, 205 S.W.3d 561, 566 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding that trial court lacked authority to order new trial for ineffective assistance of counsel because appellee did not raise ineffective assistance of counsel in motion for new trial). In fact, the trial court is barred from considering any claims not raised in timely new-trial or timely amended new-trial motion over the State's objection. *See, e.g.*, *State v. Arizmendi*, 519 S.W.3d 143, 150–51 (Tex. Crim. App. 2017) (holding that trial court was barred from considering ineffective-assistance claim

"A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018) (citing *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)); *accord State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017). Here, the trial court's finding that "the evidence doesn't reflect [that the prosecutor made a conscious choice to mislead the court]"—a finding of historical fact to which we give deference in our review, *see Gutierrez*, 541 S.W.3d at 98; *Riley*, 378 S.W.3d at 458—does not support the legal conclusion that Delacruz was entitled to a new trial on the basis of prosecutorial misconduct or the trial court's decision to grant a new trial. Consequently, we conclude that the trial court abused its discretion in granting a new trial. *See Arizmendi*, 519 S.W.3d at 148 ("Granting a new trial for a 'non-legal or legally invalid reason is an abuse of discretion.'" (quoting *Herndon*, 215 S.W.3d at 907)); *Thomas*, 428 S.W.3d at 104 ("[T]he court cannot grant a new trial 'unless the defendant shows that he is entitled to one under the law.'" (quoting *Herndon*, 215 S.W.3d at 907)). We sustain the State's sole point of error.

---

that was not raised in motion for new trial); *State v. Zalman*, 400 S.W.3d 590, 594–95 (Tex. Crim. App. 2013) (holding that trial court abused its discretion in granting new trial because "memoranda of law" was untimely and did not support legal claim presented in motion and thus trial court was not allowed to consider arguments contained in late-filed "memorandum of law"); *Trout v. State*, 702 S.W.2d 618, 619–20 (Tex. Crim. App. 1985) (holding unalleged act of jury misconduct was not properly presented by motion for new trial and should not have been entertained by trial court over State's objection at hearing on motion for new trial); *Joseph v. State*, No. 03-05-00433-CR, 2007 WL 283030, at *1–2 (Tex. App.—Austin Jan. 31, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that claim of ineffective assistance of counsel should not have been entertained by trial court at new-trial hearing over State's objection because claim was not presented by motion for new trial but only raised in untimely filed "evidentiary addendum").

15

## CONCLUSION

The trial court's order was the functional equivalent of an order granting a new trial. Further, given that a motion for new trial is a prerequisite for granting a new trial, Delacruz's motion to set aside the verdict was the functional equivalent of a motion for new trial. The only legal claim Delacruz raised in his post-trial motion, and the only legal claim addressed at the post-trial hearing on the motion, was a claim of prosecutorial misconduct. The trial court explicitly rejected that claim. Thus, having rejected the only legal basis for a new trial that was raised in the post-trial motion, the trial court abused its discretion by granting a new trial. Accordingly, we reverse the trial court's order granting a new trial and remand this cause for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Reversed and Remanded

Filed:   October 5, 2018

Do Not Publish

16